(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VEGA *v.* TEKOH

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 21–499.   Argued April 20, 2022—Decided June 23, 2022

The case arose out of the interrogation of respondent, Terence Tekoh, by petitioner, Los Angeles County Sheriff's Deputy Carlos Vega.  Deputy Vega questioned Tekoh at the medical center where Tekoh worked regarding the reported sexual assault of a patient.  Vega did not inform Tekoh of his rights under *Miranda* v. *Arizona*, 384 U. S. 436.  Tekoh eventually provided a written statement apologizing for inappropriately touching the patient's genitals.  Tekoh was prosecuted for unlawful sexual penetration.  His written statement was admitted against him at trial.  After the jury returned a verdict of not guilty, Tekoh sued Vega under 42 U. S. C. §1983, seeking damages for alleged violations of his constitutional rights.  The Ninth Circuit held that the use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a §1983 claim against the officer who obtained the statement.

*Held*: A violation of the *Miranda* rules does not provide a basis for a §1983 claim.  Pp. 4–16.

   (a) Section 1983 provides a cause of action against any person acting under color of state law who "subjects" a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Tekoh argues that a violation of *Miranda* constitutes a violation of the Fifth Amendment right against compelled self-incrimination.  That is wrong.  Pp. 4–13.

   (1) In *Miranda*, the Court concluded that additional procedural protections were necessary to prevent the violation of the Fifth Amendment right against self-incrimination when suspects who are in custody are interrogated by the police.  *Miranda* imposed a set of prophylactic rules requiring that custodial interrogation be preceded

by now-familiar warnings and disallowing the use of statements obtained in violation of these new rules by the prosecution in its case-in-chief. 384 U. S., at 444, 479. *Miranda* did not hold that a violation of the rules it established necessarily constitute a Fifth Amendment violation. That makes sense, as an un-*Mirandized* suspect in custody may make self-incriminating statements without any hint of compulsion. The *Miranda* Court stated that the Constitution did not itself require "adherence to any particular solution for the inherent compulsions of the interrogation process" and that its decision "in no way create[d] a constitutional straitjacket." *Id.*, at 467. Since *Miranda*, the Court has repeatedly described *Miranda* rules as "prophylactic." Pp. 4–7.

(2) After *Miranda*, the Court engaged in the process of charting the dimensions of these new prophylactic rules, and, in doing so, weighed the benefits and costs of any clarification of the prophylactic rules' scope. See *Maryland* v. *Shatzer*, 559 U. S. 98, 106. Some post-*Miranda* decisions found that the balance of interests justified restrictions that would not have been possible if *Miranda* described the Fifth Amendment right as opposed to a set of rules designed to protect that right. For example, in *Harris* v. *New York*, 401 U. S. 222, 224–226, the Court held that a statement obtained in violation of *Miranda* could be used to impeach the testimony of a defendant, even though an involuntary statement obtained in violation of the Fifth Amendment could not have been employed in this way. In *Michigan* v. *Tucker*, 417 U. S. 443, 450–452, n. 26, the Court held that the "fruits" of an un-*Mirandized* statement can be admitted. In doing so, the Court distinguished police conduct that "abridge[s] [a person's] constitutional privilege against compulsory self-incrimination" from conduct that "depart[s] only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege." 417 U. S., at 445–446. Similarly, in *Oregon* v. *Elstad*, 470 U. S. 298, the Court, following the reasoning in *Tucker*, refused to exclude a signed confession and emphasized that an officer's error "in administering the prophylactic *Miranda* procedures . . . should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself." *Id.*, at 309.

While many of the Court's decisions imposed limits on *Miranda*'s prophylactic rules, other decisions found that the balance of interests called for expansion. For example, in *Doyle* v. *Ohio*, 426 U. S. 610, the Court held that silence following a *Miranda* warning cannot be used to impeach. The Court acknowledged that *Miranda* warnings are "prophylactic," 426 U. S., at 617, but it found that allowing the use of post-warning silence would undermine the warnings' implicit promise that silence would not be used to convict. *Id.,* at 618. Likewise, in *Withrow* v. *Williams*, 507 U. S. 680, the Court rejected an attempt to

restrict *Miranda*'s application in collateral proceedings based on the reasoning in *Stone* v. *Powell*, 428 U. S. 465 (1976).  Once again acknowledging that *Miranda* adopted prophylactic rules, the Court balanced the competing interests and found that the costs of adopting a *Stone*-like rule outweighed any benefits.  In sum, the Court's post-*Miranda* cases acknowledge the prophylactic nature of the *Miranda* rules and engage in cost-benefit analysis to define their scope.  Pp. 7–11.

(3) The Court's decision in *Dickerson* v. *United States*, 530 U. S. 428, did not upset the firmly established prior understanding of *Miranda* as a prophylactic decision.  *Dickerson* involved a federal statute, 18 U. S. C. §3501, that effectively overruled *Miranda* by making the admissibility of a statement given during custodial interrogation turn solely on whether it was made voluntarily.  530 U. S., at 431–432.  The Court held that Congress could not abrogate *Miranda* by statute because *Miranda* was a "constitutional decision" that adopted a "constitutional rule," 530 U. S., at 438–439, and the Court noted that these rules could not have been made applicable to the States if they did not have that status, see *ibid*.  At the same time, the Court made it clear that it was not equating a violation of the *Miranda* rules with an outright Fifth Amendment violation.  Instead, the *Dickerson* Court described the *Miranda* rules as "constitutionally based" with "constitutional underpinnings," 530 U. S., at 440, and n. 5.  Those formulations obviously avoided saying that a *Miranda* violation is the same as a violation of the Fifth Amendment right.  *Miranda* was a "constitutional decision" and it adopted a "constitutional rule" in the sense that the decision was based on the Court's judgment about what is required to safeguard that constitutional right.  And when the Court adopts a constitutional prophylactic rule of this nature, *Dickerson* concluded, the rule has the status of a "La[w] of the United States" that is binding on the States under the Supremacy Clause (as *Miranda* implicitly held, since three of the four decisions it reversed came from state court, 384 U. S., at 491–494, 497–499), and the rule cannot be altered by ordinary legislation.  *Dickerson* thus asserted a bold and controversial claim—that this Court has the authority to create constitutionally based prophylactic rules that bind both federal and state courts—but *Dickerson* cannot be understood any other way consistent with the Court's prior decisions.  Subsequent cases confirm that *Dickerson* did not upend the Court's understanding of the *Miranda* rules as prophylactic. In sum, a violation of *Miranda* does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute "the deprivation of [a] right . . . secured by the Constitution" for purposes of §1983.  Pp. 11–13.

(b) A §1983 claim may also be based on "the deprivation of any rights . . . secured by the . . . *laws*."  But the argument that *Miranda* rules

Syllabus

constitute federal "law" that can provide the ground for a §1983 claim cannot succeed unless Tekoh can persuade the Court that this "law" should be expanded to include the right to sue for damages under §1983. "A judicially crafted" prophylactic rule should apply "only where its benefits outweigh its costs," *Shatzer*, 559 U. S., at 106. Here, while the benefits of permitting the assertion of *Miranda* claims under §1983 would be slight, the costs would be substantial. For example, allowing a claim like Tekoh's would disserve "judicial economy," *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 326, by requiring a federal judge or jury to adjudicate a factual question (whether Tekoh was in custody when questioned) that had already been decided by a state court. Allowing §1983 suits based on *Miranda* claims could also present many procedural issues. *Miranda* and its progeny provide sufficient protection for the Fifth Amendment right against compelled self-incrimination. Pp. 13–16.

985 F. 3d 713, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. KAGAN, J., filed a dissenting opinion, in which BREYER and SOTOMAYOR, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 21–499

CARLOS VEGA, PETITIONER *v.* TERENCE B. TEKOH

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 23, 2022]

JUSTICE ALITO delivered the opinion of the Court.

This case presents the question whether a plaintiff may sue a police officer under Rev. Stat. §1979, 42 U. S. C. §1983, based on the allegedly improper admission of an "un-*Mirandized*"[1] statement in a criminal prosecution. The case arose out of the interrogation of respondent, Terence Tekoh, by petitioner, Los Angeles County Sheriff's Deputy Carlos Vega. Deputy Vega questioned Tekoh at his place of employment and did not give him a *Miranda* warning. Tekoh was prosecuted, and his confession was admitted into evidence, but the jury returned a verdict of not guilty. Tekoh then sued Vega under §1983, and the United States Court of Appeals for the Ninth Circuit held that the use of Tekoh's un-*Mirandized* statement provided a valid basis for a §1983 claim against Vega. We now reject this extension of our *Miranda* case law.

I

In March 2014, Tekoh was working as a certified nursing assistant at a Los Angeles medical center. When a female patient accused him of sexually assaulting her, the hospital

---

[1] See *Miranda* v. *Arizona*, 384 U. S. 436 (1966).

staff reported the accusation to the Los Angeles County Sheriff's Department, and Deputy Vega responded. Vega questioned Tekoh at length in the hospital, and Tekoh eventually provided a written statement apologizing for inappropriately touching the patient's genitals. The parties dispute whether Vega used coercive investigatory techniques to extract the statement, but it is undisputed that he never informed Tekoh of his rights under *Miranda* v. *Arizona*, 384 U. S. 436 (1966), which held that during a custodial interrogation police officers must inform a suspect that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." *Id.*, at 479.

Tekoh was arrested and charged in California state court with unlawful sexual penetration. At Tekoh's first trial, the judge held that *Miranda* had not been violated because Tekoh was not in custody when he provided the statement, but the trial resulted in a mistrial. When Tekoh was retried, a second judge again denied his request to exclude the confession. This trial resulted in acquittal, and Tekoh then brought this action under 42 U. S. C. §1983 against Vega and several other defendants seeking damages for alleged violations of his constitutional rights, including his Fifth Amendment right against compelled self-incrimination.

When this §1983 case was first tried, the jury returned a verdict in favor of Vega, but the judge concluded that he had given an improper jury instruction and thus granted a new trial. Before the second trial, Tekoh asked the court to instruct the jury that it was required to find that Vega violated the Fifth Amendment right against compelled self-incrimination if it determined that he took a statement from Tekoh in violation of *Miranda* and that the statement was then improperly used against Tekoh at his criminal trial. The District Court declined, reasoning that *Miranda*

established a prophylactic rule and that such a rule could not alone provide a ground for §1983 liability. Instead, the jury was asked to decide whether Tekoh's Fifth Amendment right had been violated. The court instructed the jury to determine, based on "the totality of all the surrounding circumstances," whether Tekoh's statement had been "improperly coerced or compelled," and the court explained that "[a] confession is improperly coerced or compelled . . . if a police officer uses physical or psychological force or threats not permitted by law to undermine a person's ability to exercise his or her free will." App. to Pet. for Cert. 119a. The jury found in Vega's favor, and Tekoh appealed.

A Ninth Circuit panel reversed, holding that the "use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a §1983 claim" against the officer who obtained the statement. *Tekoh* v. *County of Los Angeles*, 985 F. 3d 713, 722 (2021). The panel acknowledged that this Court has repeatedly said that *Miranda* adopted prophylactic rules designed to protect against constitutional violations and that the decision did not hold that the contravention of those rules necessarily constitutes a constitutional violation. See 985 F. 3d, at 719–720. But the panel thought that our decision in *Dickerson* v. *United States*, 530 U. S. 428 (2000), "made clear that the right of a criminal defendant against having an un-*Mirandized* statement introduced in the prosecution's case in chief is indeed a right secured by the Constitution." 985 F. 3d, at 720. Therefore the panel concluded that Tekoh could establish a violation of his Fifth Amendment right against compelled self-incrimination simply by showing that *Miranda* had been violated. See 985 F. 3d, at 720. The panel thus remanded the case for a new trial.

Vega's petition for rehearing en banc was denied, but Judge Bumatay, joined by six other judges, filed a dissent

from the denial of rehearing. *Tekoh* v. *County of Los Angeles*, 997 F. 3d 1260, 1261, 1264–1272 (CA9 2021). We then granted certiorari. 595 U. S. ___ (2022).

## II

Section 1983 provides a cause of action against any person acting under color of state law who "subjects" a person or "causes [a person] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The question we must decide is whether a violation of the *Miranda* rules provides a basis for a claim under §1983. We hold that it does not.

### A

If a *Miranda* violation were tantamount to a violation of the Fifth Amendment, our answer would of course be different. The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy* v. *Hogan*, 378 U. S. 1, 6 (1964), provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." This Clause "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant" and "also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota* v. *Murphy*, 465 U. S. 420, 426 (1984) (quoting *Lefkowitz* v. *Turley*, 414 U. S. 70, 77 (1973)). In addition, the right bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion. See, *e.g., Bram* v. *United States,* 168 U. S. 532, 565 (1897); *Miranda*, 384 U. S., at 466; *Michigan* v. *Tucker*, 417 U. S. 433, 440–442 (1974).

In *Miranda*, the Court concluded that additional procedural protections were necessary to prevent the violation of this important right when suspects who are in custody are interrogated by the police. To afford this protection, the

Court required that custodial interrogation be preceded by the now-familiar warnings mentioned above, and it directed that statements obtained in violation of these new rules may not be used by the prosecution in its case-in-chief. 384 U. S., at 444, 479.

In this case, the Ninth Circuit held—and Tekoh now argues, Brief for Respondent 20—that a violation of *Miranda* constitutes a violation of the Fifth Amendment right against compelled self-incrimination, but that is wrong. *Miranda* itself and our subsequent cases make clear that *Miranda* imposed a set of prophylactic rules. Those rules, to be sure, are "constitutionally based," *Dickerson*, 530 U. S., at 440, but they are prophylactic rules nonetheless.

B

*Miranda* itself was clear on this point. *Miranda* did not hold that a violation of the rules it established necessarily constitute a Fifth Amendment violation, and it is difficult to see how it could have held otherwise. For one thing, it is easy to imagine many situations in which an un-*Mirandized* suspect in custody may make self-incriminating statements without any hint of compulsion. In addition, the warnings that the Court required included components, such as notification of the right to have retained or appointed counsel present during questioning, that do not concern self-incrimination *per se* but are instead plainly designed to safeguard that right. And the same is true of *Miranda*'s detailed rules about the waiver of the right to remain silent and the right to an attorney. 384 U. S., at 474–479.

At no point in the opinion did the Court state that a violation of its new rules constituted a violation of the Fifth Amendment right against compelled self-incrimination. Instead, it claimed only that those rules were needed to safeguard that right during custodial interrogation. See *id*., at 439 (describing its rules as "procedures which assure that

the individual is accorded his privilege under the Fifth Amendment"); *id.*, at 444 (describing rules as "procedural safeguards"); *id.*, at 457 ("appropriate safeguards"); *id.*, at 458 ("adequate protective devices"); *id.*, at 467 ("safeguards").

In accordance with this understanding of the nature of the rules it imposed, the *Miranda* Court stated quite clearly that the Constitution did not itself require "adherence to any particular solution for the inherent compulsions of the interrogation process" and that its decision "in no way create[d] a constitutional straitjacket." *Ibid.* The opinion added that its new rules might not be needed if Congress or the States adopted "other procedures which are at least as effective," *ibid.*, and the opinion suggested that there might not have been any actual Fifth Amendment violations in the four cases that were before the Court. See *id.*, at 457 ("In these cases, we might not find the defendants' statements to have been involuntary in traditional terms"). The Court could not have said any of these things if a violation of the *Miranda* rules necessarily constituted a violation of the Fifth Amendment.

Since *Miranda*, the Court has repeatedly described the rules it adopted as "prophylactic." See *Howes* v. *Fields*, 565 U. S. 499, 507 (2012); *J. D. B.* v. *North Carolina*, 564 U. S. 261, 269 (2011); *Maryland* v. *Shatzer*, 559 U. S. 98, 103 (2010); *Montejo* v. *Louisiana*, 556 U. S. 778, 794 (2009); *Davis* v. *United States*, 512 U. S. 452, 458 (1994); *Brecht* v. *Abrahamson*, 507 U. S. 619, 629 (1993); *Withrow* v. *Williams*, 507 U. S. 680, 691 (1993); *McNeil* v. *Wisconsin*, 501 U. S. 171, 176 (1991); *Michigan* v. *Harvey*, 494 U. S. 344, 350 (1990); *Duckworth* v. *Eagan*, 492 U. S. 195, 203 (1989); *Arizona* v. *Roberson*, 486 U. S. 675, 681 (1988); *Connecticut* v. *Barrett*, 479 U. S. 523, 528 (1987); *Oregon* v. *Elstad*, 470 U. S. 298, 309 (1985); *New York* v. *Quarles*, 467 U. S. 649, 654 (1984); *South Dakota* v. *Neville*, 459 U. S. 553, 564, n. 15 (1983); *United States* v. *Henry*, 447 U. S. 264, 274 (1980);

*North Carolina* v. *Butler*, 441 U. S. 369, 374 (1979); *Brown* v. *Illinois*, 422 U. S. 590, 600 (1975); *Michigan* v. *Tucker*, 417 U. S., at 439; and *Michigan* v. *Payne*, 412 U. S. 47, 53 (1973).[2]

C

After *Miranda* was handed down, the Court engaged in the process of charting the dimensions of these new prophylactic rules. As we would later spell out, this process entailed a weighing of the benefits and costs of any clarification of the rules' scope. See *Shatzer*, 559 U. S., at 106 ("A judicially crafted rule is 'justified only by reference to its prophylactic purpose,' . . . and applies only where its benefits outweigh its costs").

Some post-*Miranda* decisions found that the balance of interests justified restrictions that would not have been possible if *Miranda* represented an explanation of the meaning of the Fifth Amendment right as opposed to a set of rules designed to protect that right. For example, in *Harris* v. *New York*, 401 U. S. 222, 224–226 (1971), the Court held that a statement obtained in violation of *Miranda* could be used to impeach the testimony of a defendant, even though an involuntary statement obtained in violation of the Fifth Amendment could not have been employed in this way. See *Mincey* v. *Arizona*, 437 U. S. 385, 398 (1978)

---

[2] Tekoh cites *Orozco* v. *Texas*, 394 U. S. 324 (1969), which characterized the admission of an unwarned statement in the prosecutor's case-in-chief as a "flat violation of the Self-Incrimination Clause of the Fifth Amendment *as construed in Miranda.*" *Id.,* at 326 (emphasis added); Brief for Respondent 21, 29. But the Court made this assertion in a three-paragraph opinion without any additional analysis, and did not purport to go beyond *Miranda*, which, as we have explained, does not support the proposition that a *Miranda* violation equates to a Fifth Amendment violation. See *Orozco,* 394 U. S., at 327 ("We do not . . . expand or extend to the slightest extent our *Miranda* decision"). Likewise, the decision predates the subsequent case law defining the scope of the *Miranda* rules. See *infra,* this page and 8–11.

("[A]ny criminal trial use against a defendant of his involuntary statement is a denial of due process of law" (emphasis deleted)). Engaging in the process we described in *Shatzer*, the *Harris* Court considered the benefits of forbidding impeachment but dismissed "the speculative possibility" that this would discourage "impermissible police conduct," and on the other side of the scale, it feared that barring impeachment would turn *Miranda* into "a license to use perjury by way of a defense." 401 U. S., at 225–226.

A similar analysis was used in *Michigan* v. *Tucker*, 417 U. S. 443, 450–452, n. 26 (1974), where the Court held that the "fruits" of an un-*Mirandized* statement can be admitted. The Court noted that "the 'fruits' of police conduct which actually infringe[s]" a defendant's constitutional rights must be suppressed. *Id.*, at 445; see also *Wong Sun* v. *United States*, 371 U. S. 471 (1963) (applying the rule in the context of a Fourth Amendment violation). But the Court distinguished police conduct that "abridge[s] [a person's] constitutional privilege against compulsory self-incrimination" from conduct that "depart[s] only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege." 417 U. S., at 445–446. Because there had been only a *Miranda* violation in that case, the *Wong Sun* rule of automatic exclusion was found to be inapplicable. See 417 U. S., at 445–446. Instead, the Court asked whether the *Miranda* rules' prophylactic purposes justified the exclusion of the fruits of the violation, and after "balancing the interests involved," it held that exclusion was not required. 417 U. S., at 447–452.

In *New York* v. *Quarles*, 467 U. S. 649, 654–657 (1984), the Court held that statements obtained in violation of *Miranda* need not be suppressed when the questioning is conducted to address an ongoing "public safety" concern. The Court reasoned that *Miranda* warnings are "'not themselves rights protected by the Constitution'" and that "the need for answers to questions in a situation posing a threat

to the public safety outweigh[ed] the need for the prophy-lactic rule." 467 U. S., at 654, 657.

Finally, in *Elstad*, 470 U. S. 298, the Court again distinguished between a constitutional violation and a violation of *Miranda*. In that case, a suspect in custody was initially questioned without receiving a *Miranda* warning, and the statements made at that time were suppressed. 470 U. S., at 301–302. But the suspect was later given *Miranda* warnings, chose to waive his *Miranda* rights, and signed a written confession. 470 U. S., at 301. Asked to decide whether this confession was admissible, the Court followed the reasoning in *Tucker* and again held that the fruit-of-the-poisonous-tree rule that applies to constitutional violations does not apply to violations of *Miranda*. 470 U. S., at 306–309, 318. The Court refused to exclude the signed confession and emphasized that an officer's error "in administering the prophylactic *Miranda* procedures . . . should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself."[3] *Id.,* at 309.

----

[3] Two other decisions fall into this same category, but in both there was no opinion of the Court. In *Chavez* v. *Martinez*, 538 U. S. 760 (2003), the suspect gave an un-*Mirandized* statement while in custody but was never charged with a crime. The Court held that the suspect could not bring a 42 U. S. C. §1983 claim against the officer who questioned him, and Justice Souter, who cast the necessary fifth vote on the issue, reached that conclusion based on "a realistic assessment of costs and risks" of "expand[ing] protection of the privilege against compelled self-incrimination to the point of the civil liability" at issue. 538 U. S., at 778–779 (opinion concurring in judgment).

In *United States* v. *Patane*, 542 U. S. 630 (2004), the Court once again held that *Miranda* does not require the suppression of the fruits of a un-*Mirandized* statement made during custodial questioning, and two of the five Justices in the majority engaged in the same type of balancing that was used in *Michigan* v. *Tucker*, 417 U. S. 433 (1974), and *Elstad*. See *Patane*, 542 U. S., at 644–645 (Kennedy, J., concurring in judgment); see also *id.,* at 641–644 (plurality opinion).

It is hard to see how these decisions could stand if a violation of *Miranda* constituted a violation of the Fifth Amendment.

## D

While these decisions imposed limits on *Miranda*'s prophylactic rules, other decisions found that the balance of interests called for expansion. In *Doyle* v. *Ohio*, 426 U. S. 610, 617–619 (1976), the Court held that silence following a *Miranda* warning cannot be used to impeach. The Court acknowledged that *Miranda* warnings are "prophylactic," 426 U. S., at 617, and it recognized the prosecution's need to test a defendant's exculpatory story through cross-examination, *id.,* at 616–618. But it found that allowing the use of post-warning silence would undermine the warnings' implicit promise that silence would not be used to convict. *Id.,* at 618.

Similarly, in *Roberson*, 486 U. S., at 682, the Court held that a suspect's post-warning request for counsel with respect to one offense barred later interrogation without counsel regarding a different offense. Describing the *Miranda* rules as "prophylactic protections," 486 U. S., at 681, the Court concluded that both law enforcement and criminal defendants would benefit from a bright-line, *id.,* at 681–682.

Finally, in *Withrow* v. *Williams*, 507 U. S. 680, the Court rejected an attempt to restrict *Miranda*'s application in collateral proceedings based on the reasoning in *Stone* v. *Powell*, 428 U. S. 465 (1976). In *Stone*, the Court had held that a defendant who has had a full and fair opportunity to seek suppression of evidence allegedly seized in violation of the Fourth Amendment may not obtain federal habeas relief on that ground, *id*., at 494–495, and in *Withrow*, a state prison warden argued that a similar rule should apply to a habeas petitioner who had been given an opportunity to litigate a *Miranda* claim at trial, see 507 U. S., at 688–690. Once

again acknowledging that *Miranda* adopted prophylactic rules, the Court balanced the competing interests and found that the costs of adopting the warden's argument outweighed any benefits. On the cost side, the Court noted that enforcing *Miranda* "safeguards 'a fundamental *trial* right" and furthers "the correct ascertainment of guilt" at trial. 507 U. S*.,* at 691–692. And on the other side, the Court found that the adoption of a *Stone*-like rule "would not significantly benefit the federal courts in their exercise of habeas jurisdiction, or advance the cause of federalism in any substantial way." 507 U. S., at 693.

Thus, all the post-*Miranda* cases we have discussed acknowledged the prophylactic nature of the *Miranda* rules and engaged in cost-benefit analysis to define the scope of these prophylactic rules.

E

Contrary to the decision below and Tekoh's argument here, see Brief for Respondent 24, our decision in *Dickerson*, 530 U. S. 428, did not upset the firmly established prior understanding of *Miranda* as a prophylactic decision. *Dickerson* involved a federal statute, 18 U. S. C. §3501, that effectively overruled *Miranda* by making the admissibility of a statement given during custodial interrogation turn solely on whether it was made voluntarily. 530 U. S., at 431–432. The Court held that Congress could not abrogate *Miranda* by statute because *Miranda* was a "constitutional decision" that adopted a "constitutional rule," 530 U. S., at 438–439, and the Court noted that these rules could not have been made applicable to the States if it did not have that status, see *ibid.*

At the same time, however, the Court made it clear that it was not equating a violation of the *Miranda* rules with an outright Fifth Amendment violation. For one thing, it reiterated *Miranda*'s observation that "the Constitution would not preclude legislative solutions that differed from

the prescribed *Miranda* warnings but which were 'at least as effective in apprising accused persons'" of their rights. 530 U. S., at 440 (quoting *Miranda*, 384 U. S., at 467).

Even more to the point, the Court rejected the dissent's argument that §3501 could not be held unconstitutional unless "*Miranda* warnings are required by the Constitution, in the sense that nothing else will suffice to satisfy constitutional requirements." 530 U. S., at 442. The Court's answer, in substance, was that the *Miranda* rules, though not an explication of the meaning of the Fifth Amendment right, are rules that are necessary to protect that right (at least until a better alternative is found and adopted). See 530 U. S., at 441–443. Thus, in the words of the *Dickerson* Court, the *Miranda* rules are "constitutionally based" and have "constitutional underpinnings." 530 U. S., at 440, and n. 5. But the obvious point of these formulations was to avoid saying that a *Miranda* violation is the same as a violation of the Fifth Amendment right.

What all this boils down to is basically as follows. The *Miranda* rules are prophylactic rules that the Court found to be necessary to protect the Fifth Amendment right against compelled self-incrimination. In that sense, *Miranda* was a "constitutional decision" and it adopted a "constitutional rule" because the decision was based on the Court's judgment about what is required to safeguard that constitutional right. And when the Court adopts a constitutional prophylactic rule of this nature, *Dickerson* concluded, the rule has the status of a "La[w] of the United States" that is binding on the States under the Supremacy Clause[4] (as *Miranda* implicitly held, since three of the four decisions it reversed came from state court, 384 U. S., at 491–494, 497–499), and the rule cannot be altered by ordinary legislation.

————————
[4] U. S. Const., Art. VI, §2.

This was a bold and controversial claim of authority,[5] but we do not think that *Dickerson* can be understood any other way without (1) taking the insupportable position that a *Miranda* violation is tantamount to a violation of the Fifth Amendment, (2) calling into question the prior decisions that were predicated on the proposition that a *Miranda* violation is not the same as a constitutional violation, and (3) excising from the United States Reports a mountain of statements describing the *Miranda* rules as prophylactic.

Subsequent cases confirm that *Dickerson* did not upend the Court's understanding of the *Miranda* rules as prophylactic. See, *e.g., supra,* at 6–7 (collecting post-*Dickerson* cases).

In sum, a violation of *Miranda* does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute "the deprivation of [a] right . . . secured by the Constitution." 42 U. S. C. §1983.

## III

This conclusion does not necessarily dictate reversal because a §1983 claim may also be based on "the deprivation of any rights, privileges, or immunities secured by the . . . *laws*." (Emphasis added.) It may thus be argued that the *Miranda* rules constitute federal "law" and that an abridgment of those rules can therefore provide the ground for a

---

[5] Whether this Court has the authority to create constitutionally based prophylactic rules that bind both federal and state courts has been the subject of debate among jurists and commentators. See, *e.g.*, *Dickerson*, 530 U. S., at 445–446, 457–461 (Scalia, J., joined by THOMAS, J., dissenting); D. Strauss, The Ubiquity of Prophylactic Rules, 55 U. Chi. L. Rev. 190 (1988); J. Grano, Prophylactic Rules in Criminal Procedure: A Question of Article III Legitimacy, 80 Nw. U. L. Rev. 100 (1985); H. Monaghan, Foreword: Constitutional Common Law, 89 Harv. L. Rev. 1 (1975). But that is what the Court did in *Miranda*, and we do not disturb that decision in any way. Rather, we accept it on its own terms, and for the purpose of deciding this case, we follow its rationale.

§1983 claim.  But whatever else may be said about this ar-
gument,[6] it cannot succeed unless Tekoh can persuade us
that this "law" should be expanded to include the right to
sue for damages under §1983.

As we have noted, "[a] judicially crafted" prophylactic
rule should apply "only where its benefits outweigh its
costs," *Shatzer*, 559 U. S., at 106, and here, while the bene-
fits of permitting the assertion of *Miranda* claims under
§1983 would be slight, the costs would be substantial.

*Miranda* rests on a pragmatic judgment about what is
needed to stop the violation at trial of the Fifth Amendment
right against compelled self-incrimination.  That prophy-
lactic purpose is served by the suppression at trial of state-

––––––––––

[6] "[Section] 1983 does not provide an avenue for relief every time a state
actor violates a federal law."  *Rancho Palos Verdes* v. *Abrams*, 544 U. S.
113, 119 (2005).  If a §1983 plaintiff demonstrates that the federal stat-
ute "creates an individually enforceable right in the class of beneficiaries
to which he belongs," this gives rise to "'a rebuttable presumption that
the right is enforceable under §1983,'" and "[t]he defendant may defeat
this presumption by demonstrating that Congress did not intend that
remedy for a newly created right."  *Id.,* at 120 (quoting *Blessing* v. *Free-
stone*, 520 U. S. 329, 341 (1997)).  In this case, the "law" that could confer
the right in question is not a statute but judicially created prophylactic
rules.  It could be argued that a judicially created prophylactic rule can-
not be the basis for a §1983 suit, but we need not decide that question
because, assuming that such rules can provide the basis for a §1983
claim, we would be led back to a question that is very much like the one
discussed *supra*, at 7–11, namely, whether the benefits of allowing such
a claim outweigh the costs.

The dissent, by contrast, would apparently hold that a prophylactic
rule crafted by the Judiciary to protect a constitutional right, unlike a
statute that confers a personal right, is always cognizable under §1983.
There is no sound reason to give this preferred status to such prophylac-
tic rules.  The dissent contends that the *Miranda* rules merit this special
treatment because they are "secured by" the Constitution, see *post*, at 5–
6, but in fact, as we have shown, those rules differ from the right secured
by the Fifth Amendment and are instead secured for prophylactic rea-
sons by decisions of this Court.

ments obtained in violation of *Miranda* and by the application of that decision in other recognized contexts. Allowing the victim of a *Miranda* violation to sue a police officer for damages under §1983 would have little additional deterrent value, and permitting such claims would cause many problems.

Allowing a claim like Tekoh's would disserve "judicial economy," *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 326 (1979), by requiring a federal judge or jury to adjudicate a factual question (whether Tekoh was in custody when questioned) that had already been decided by a state court. This re-adjudication would not only be wasteful; it would undercut the "'strong judicial policy against the creation of two conflicting resolutions'" based on the same set of facts. *Heck* v. *Humphrey*, 512 U. S. 477, 484 (1994). And it could produce "unnecessary friction" between the federal and state court systems by requiring the federal court entertaining the §1983 claim to pass judgment on legal and factual issues already settled in state court. See *Preiser* v. *Rodriguez*, 411 U. S. 475, 490–491 (1973).

Allowing §1983 suits based on *Miranda* claims could also present many procedural issues, such as whether a federal court considering a §1983 claim would owe any deference to a trial court's factual findings; whether forfeiture and plain error rules carry over from the criminal trial; whether harmless-error rules apply; and whether civil damages are available in instances where the unwarned statement had no impact on the outcome of the criminal case.

We therefore refuse to extend *Miranda* in the way Tekoh requests. *Miranda*, *Dickerson*, and the other cases in that line provide sufficient protection for the Fifth Amendment right against compelled self-incrimination. "The identification of a *Miranda* violation and its consequences . . . ought to be determined at trial." *Chavez* v. *Martinez*, 538 U. S. 760, 790 (2003) (Kennedy, J., concurring in part and dissenting in part). And except in unusual circumstances, the

"exclusion of unwarned statements" should be "a complete and sufficient remedy." *Ibid.*

\* \* \*

Because a violation of *Miranda* is not itself a violation of the Fifth Amendment, and because we see no justification for expanding *Miranda* to confer a right to sue under §1983, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–499

_____

## CARLOS VEGA, PETITIONER *v.* TERENCE B. TEKOH

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 23, 2022]

JUSTICE KAGAN, with whom JUSTICE BREYER and
JUSTICE SOTOMAYOR join, dissenting.

The Court's decision in *Miranda* v. *Arizona*, 384 U. S. 436
(1966), affords well-known protections to suspects who are
interrogated by police while in custody. Those protections
derive from the Constitution: *Dickerson* v. *United States*
tells us in no uncertain terms that *Miranda* is a "constitu-
tional rule." 530 U. S. 428, 444 (2000). And that rule grants
a corresponding right: If police fail to provide the *Miranda*
warnings to a suspect before interrogating him, then he is
generally entitled to have any resulting confession excluded
from his trial. See 384 U. S., at 478–479. From those facts,
only one conclusion can follow—that *Miranda*'s protections
are a "right[]" "secured by the Constitution" under the fed-
eral civil rights statute. Rev. Stat. §1979, 42 U. S. C. §1983.
Yet the Court today says otherwise. It holds that *Miranda*
is not a constitutional right enforceable through a §1983
suit. And so it prevents individuals from obtaining any re-
dress when police violate their rights under *Miranda*. I re-
spectfully dissent.

*Miranda* responded to problems stemming from the in-
terrogation of suspects "incommunicado" and "in a police-
dominated atmosphere." *Miranda*, 384 U. S., at 445. In
such an environment, *Miranda* said, there are "pressures"
which may "compel [a suspect] to speak where he would not
otherwise do so freely." *Id.*, at 467. And so *Miranda* found

a "necessity for procedures which assure that the individual is accorded his" Fifth Amendment privilege "not to be compelled to incriminate himself." *Id.*, at 439. *Miranda* set out protocols (including the now-familiar warnings) that would safeguard the constitutional privilege against self-incrimination. See *id.*, at 478–479. And *Miranda* held that if police failed to follow those requirements (without substituting equally effective ones), the prosecution could not use at trial a statement obtained from the interrogation. See *id.*, at 479.

The question in this case is whether *Miranda*'s protections are a "right[]" that is "secured by the Constitution" within the meaning of §1983. If the answer is yes, then a person may sue a state actor who deprives him of the right. In past cases, the Court has given a broad construction to §1983's broad language. See, *e.g.*, *Dennis* v. *Higgins*, 498 U. S. 439, 443 (1991). Under §1983 (as elsewhere), a "right[]" is anything that creates specific "obligations binding on [a] governmental unit" that an individual may ask the judiciary to enforce. *Id.*, at 449; see *id.*, at 447, and n. 7. And the phrase "secured by the Constitution" also has a capacious meaning. It refers to any right that is "protect[ed] or ma[de] certain" by the country's foundational charter. *Hague* v. *Committee for Industrial Organization*, 307 U. S. 496, 527 (1939) (opinion of Stone, J.) (internal quotation marks omitted).

Begin with whether *Miranda* is "secured by the Constitution." We know that it is, because the Court's decision in *Dickerson* says so. *Dickerson* tells us again and again that *Miranda* is a "constitutional rule." 530 U. S., at 444. It is a "constitutional decision" that sets forth "'concrete constitutional guidelines.'" *Id.*, at 432, 435 (quoting *Miranda*, 384 U. S., at 442). *Miranda* "is constitutionally based"; or again, it has a "constitutional basis." 530 U. S., at 439, n. 3, 440. It is "of constitutional origin"; it has "constitutional underpinnings." *Id.*, at 439, n. 3, 440, n. 5. And—one

more—*Miranda* sets a "constitutional minimum."   530
U. S., at 442.  Over and over, *Dickerson* labels *Miranda* a
rule stemming from the Constitution.

   *Dickerson* also makes plain that *Miranda* has all the sub-
stance of a constitutional rule—including that it cannot be
"abrogate[d]" by any "legislation."  *Miranda*, 384 U. S., at
491; see *Dickerson*, 530 U. S., at 437.   In *Dickerson*, the
Court considered a federal statute whose obvious purpose
was to override *Miranda*.  *Dickerson* held that *Miranda* is
a "constitutional decision" that cannot be "overruled by"
any "Act of Congress."  530 U. S., at 432.  To be sure, Con-
gress may devise "legislative solutions that differ[] from the
prescribed *Miranda* warnings," but only if those solutions
are "'at least as effective.'"  *Id.*, at 440 (quoting *Miranda*,
384 U. S., at 467).  *Dickerson* therefore instructs (as noted
above) that *Miranda* sets a "constitutional minimum."  530
U. S., at 442.  No statute may provide lesser protection than
that baseline.\*

   And *Dickerson* makes clear that the constitutional sub-
stance of *Miranda* does not end there.  Rules arising from
"the United States Constitution" are applicable in state-
court proceedings, but non-constitutional rules are not.  See
530 U. S., at 438 (explaining that the Court "do[es] not hold
a supervisory power over the courts of the several States").
Too, constitutional rules are enforceable in federal-court
habeas proceedings, where a prisoner is entitled to claim he
"is in custody in violation of the Constitution."  28 U. S. C.

————————

   \*Other constitutional rules, like *Miranda*, leave room for States to ex-
periment with procedures, so long as the procedures satisfy the constitu-
tionally mandated baseline.  See *County of Riverside* v. *McLaughlin*, 500
U. S. 44, 58 (1991) (States may adopt different procedures for providing
probable-cause determinations for persons arrested without a warrant,
so long as those determinations are made promptly); *Smith* v. *Robbins*,
528 U. S. 259, 276–277 (2000) (States may adopt different procedures to
ensure effective appellate review for indigent defendants' claims, "so long
as [the State] reasonably ensures that an indigent's appeal will be re-
solved in a way that is related to the merit of that appeal").

§2254(a). *Miranda* checks both boxes. The Court has "consistently applied *Miranda*'s rule to prosecutions arising in state courts." *Dickerson*, 530 U. S., at 438. And prisoners may claim *Miranda* violations in federal-court habeas proceedings. See 530 U. S., at 439, n. 3; *Thompson* v. *Keohane*, 516 U. S. 99, 107, n. 5 (1995). So *Dickerson* is unequivocal: *Miranda* is set in constitutional stone.

*Miranda*'s constitutional rule gives suspects a correlative "right[]." §1983. Under *Miranda*, a suspect typically has a right to be tried without the prosecutor using his un-*Mirandized* statement. And we know how that right operates in the real world. Suppose a defendant standing trial was able to show the court that he gave an un-*Mirandized* confession during a custodial interrogation. The court would have no choice but to exclude it from the prosecutor's case. As one judge below put it: "*Miranda* indisputably creates individual legal rights that are judicially enforceable. (Any prosecutor who doubts this can try to introduce an un-*Mirandized* confession and then watch what happens.)" *Tekoh* v. *County of Los Angeles*, 997 F. 3d 1260, 1263 (CA9 2021) (Miller, J., concurring in denial of rehearing en banc).

The majority basically agrees with everything I've just explained. It concurs that, per *Dickerson*, *Miranda* "adopted a 'constitutional rule.'" *Ante*, at 11 (quoting *Dickerson*, 530 U. S., at 439); see *ante*, at 12. How could it not? That *Miranda* is a constitutional rule is what *Dickerson* said (and said and said). The majority also agrees that *Miranda* "directed that statements obtained in violation of [its] rules may not be used by the prosecution in its case-in-chief"—which is simply another way of saying that *Miranda* grants suspects a right to the exclusion of those statements from the prosecutor's case. *Ante*, at 5.

So how does the majority hold that a violation of *Miranda* is not a "deprivation of [a] right[]" "secured by the Constitution"? §1983. How does it agree with my premises, but

not my conclusion? The majority's argument is that "a violation of *Miranda* does not necessarily constitute a violation of the Constitution," because *Miranda*'s rules are "prophylactic." *Ante*, at 13. The idea is that the Fifth Amendment prohibits the use only of statements obtained by compulsion, whereas *Miranda* excludes non-compelled statements too. See *ante*, at 4–5. That is why, the majority says, the Court has been able to recognize exceptions permitting certain uses of un-*Mirandized* statements at trial (when it could not do so for compelled statements). See *ante*, at 7–9.

But none of that helps the majority's case. Let's assume, as the majority says, that *Miranda* extends beyond—in order to safeguard—the Fifth Amendment's core guarantee. Still, *Miranda* is enforceable through §1983. It remains a constitutional rule, as *Dickerson* held (and the majority agrees). And it grants the defendant a legally enforceable entitlement—in a word, a right—to have his confession excluded. So, to refer back to the language of §1983, *Miranda* grants a "right[]" "secured by the Constitution." Whether that right to have evidence excluded safeguards a yet deeper constitutional commitment makes no difference to §1983. The majority has no response to that point—except to repeat what our argument assumes already. See *ante*, at 14, n. 6 (describing *Miranda* as prophylactic).

Compare the majority's holding today to a prior decision, in which the Court "rejected [an] attempt[] to limit the types of constitutional rights that are encompassed within" §1983. *Dennis*, 498 U. S., at 445. There, the Court held that a plaintiff could sue under §1983 for a violation of the so-called dormant Commerce Clause, which safeguards interstate commerce. To the Court, it did not matter that the Commerce Clause might be viewed as "merely allocat[ing] power between the Federal and State Governments" over interstate commerce, rather than as "confer[ring] 'rights.'" *Id.*, at 447. Nor did it matter that the dormant Commerce Clause's protection is only "implied" by the constitutional

text. *Ibid.*, n. 7. The dormant Commerce Clause, the Court said, still provides a "right"—in the "ordinary" sense of being "'[a] legally enforceable claim of one person against another.'" *Ibid.* (quoting Black's Law Dictionary 1324 (6th ed. 1990)). That describes *Miranda* to a tee. And if a right implied from Congress's constitutional authority over interstate commerce is enforceable under §1983, how could it be that *Miranda*—which the Court has found necessary to safeguard the personal protections of the Fifth Amendment—is not also enforceable? The majority again has no answer.

\* \* \*

Today, the Court strips individuals of the ability to seek a remedy for violations of the right recognized in *Miranda*. The majority observes that defendants may still seek "the suppression at trial of statements obtained" in violation of *Miranda*'s procedures. *Ante*, at 14–15. But sometimes, such a statement will not be suppressed. And sometimes, as a result, a defendant will be wrongly convicted and spend years in prison. He may succeed, on appeal or in habeas, in getting the conviction reversed. But then, what remedy does he have for all the harm he has suffered? The point of §1983 is to provide such redress—because a remedy "is a vital component of any scheme for vindicating cherished constitutional guarantees." *Gomez* v. *Toledo*, 446 U. S. 635, 639 (1980). The majority here, as elsewhere, injures the right by denying the remedy. See, *e.g.*, *Egbert* v. *Boule*, 596 U. S. ___ (2022). I respectfully dissent.