NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0084n.06

Case No. 23-3447

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | Feb 27, 2024 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| EZRA L. DAVIS, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GILMAN, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. After police pulled over Ezra Davis for a traffic stop, Davis admitted he had drugs and a gun in the car. Officers seized the items, and a grand jury charged him with possessing a firearm and ammunition as a felon. The district court declined to suppress Davis's admission and its physical fruits. Davis now appeals. Finding no error, we affirm.

I.

A.

Deputy Jason Smith saw Ezra Davis swerve across the road. So he pulled Davis over and asked for his license. Davis appeared nervous and declined to provide any identification. He eventually admitted he didn't have a license and instead handed over his Ohio Department of Correction prison-release card. Deputy Smith ran Davis's information and discovered that Davis had three outstanding felony arrest warrants.

As the traffic stop continued, Davis became increasingly agitated and erratic. He claimed he needed to leave for the hospital immediately to visit his child. And, despite Deputy Smith's orders to put the car in park and turn it off, Davis repeatedly turned the car on and shifted it into drive.

Concerned that Davis was dangerous and might flee, Deputy Smith radioed for backup. When Deputies Ackerman and Kruger arrived, Deputy Smith informed them of Davis's arrest warrants and warned them about his behavior. The three agreed to execute the warrants. So Deputies Smith and Ackerman walked to the driver's side window while Deputy Kruger approached the passenger's side. They told Davis there were active warrants out for his arrest and ordered him to get out of the car.

Davis resisted. As Davis tried to put the car in gear and drive away, Deputies Smith and Ackerman reached in to restrain him. Then, through the passenger's window, Deputy Kruger pushed Davis's hand away from the gear selector and pulled the keys from the ignition. Undeterred, Davis turned around and grasped for something in the backseat. But Deputy Kruger again stopped him.

When Davis finally stepped out of the vehicle, the deputies "scrambled to secure [him] and ensure that he was unarmed and did not have access to weapons." R. 25, Pg. ID 237. Working simultaneously, Deputy Smith struggled to handcuff Davis while Deputy Ackerman patted him down and asked "if there was anything within [Davis's] reach that [he] should know about." R. 24, Pg. ID 193. Davis replied that there was marijuana and a gun in the car.

After the deputies finished cuffing Davis and ensured he had nothing dangerous on him, Deputy Smith escorted Davis to the patrol car while Deputy Ackerman searched Davis's vehicle for the drugs and gun. Deputy Ackerman discovered marijuana hidden in a Cheez-It box on the

front passenger's seat.  He also found a 9mm pistol and an extra magazine on the backseat floorboard—both within reach of the driver.  The gun had one round in the chamber and eleven in the magazine.

## B.

A grand jury charged Davis with possessing a firearm and ammunition as a felon.  *See* 18 U.S.C. §§ 922(g)(1); 924(a)(2).  After pleading not guilty, Davis moved to suppress his admission on *Miranda* grounds and the evidence from the car on Fourth Amendment grounds.  The district court held a suppression hearing at which Deputies Smith and Ackerman testified about Davis's arrest.

The district court denied the suppression motion.  It held that Deputy Ackerman's unwarned question fell within the public-safety exception to *Miranda*.  And it explained that Davis's admission that there were drugs and a gun in the car gave the deputies probable cause to search the car.

Davis then entered a conditional guilty plea, reserving the right to appeal the district court's suppression order.  *See* Fed. R. Crim. P. 11(a)(2).  The court accepted the plea and sentenced Davis to thirty-six months' imprisonment and three years' supervised release.

## II.

Davis now appeals and raises the same *Miranda* and Fourth Amendment challenges the district court rejected.  We evaluate the district court's legal conclusions de novo, assess its factual findings for clear error, and view the evidence in the light most favorable to the government.  *See* *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016).

A.

In *Miranda v. Arizona*, the Supreme Court directed police officers to inform suspects of certain rights before interrogating them. 384 U.S. 436, 479 (1966). Because Deputy Ackerman asked Davis if he had anything dangerous within reach before reciting his *Miranda* rights, Davis argues his response should be suppressed.

We disagree. *Miranda* has several exceptions. *Vega v. Tekoh*, 597 U.S. 134, 144–46 (2022). Relevant here, "statements obtained in violation of *Miranda* need not be suppressed when the questioning is conducted to address an ongoing 'public safety' concern." *Id.* at 145. Especially in fast-unfolding situations possibly involving weapons, an officer's need to protect himself and the public can outweigh the suspect's risk of self-incrimination. *E.g.*, *New York v. Quarles*, 467 U.S. 649 (1984) (asking an arrestee where he threw a gun in a store open to the public).

The public-safety exception applies here. Given Davis's erratic behavior, criminal history, outstanding felony arrest warrants, attempt to drive away, repeated failures to obey the deputies' commands, and sudden attempt to grab something from the backseat, it was objectively reasonable for Deputy Ackerman to believe Davis posed a danger. *See United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). That Davis had reached for an unknown object seconds earlier is especially noteworthy because it suggested that Davis—who was still unsecured—might have a weapon within reach. *See United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). In such "kaleidoscopic" situations, we don't second guess an officer's reasonable, split-second decision to prioritize public safety. *Quarles*, 467 U.S. at 656–58. That's especially true where, as here, the officer asks only "questions necessary to secure [his] own safety or the safety of the public," not ones "designed solely to elicit testimonial evidence from a suspect." *Id.* at 659.

In response, Davis challenges the deputies' version of events. He insists, for example, that he was fully secured, handcuffed, and thus unable to access the vehicle when Deputy Ackerman asked the question. He also claims there's no credible evidence he reached for anything in the backseat. And he suggests the deputies acted pretextually. If all that were true, then the public-safety exception likely wouldn't apply. *See Williams*, 483 F.3d at 429–30.

But the district court found otherwise, and we afford those findings great deference.[1] After all, the district court was in the "best position" to review the evidence, observe the deputies' demeanor at the suppression hearing, and make credibility determinations. *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999); *accord United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005). And after performing this review, the court found that "in one fluid, chaotic moment," Deputy Ackerman asked Davis about dangerous items within his reach "while" Deputy Smith handcuffed him. R. 25, Pg. ID 240. To be sure, Deputy Smith's testimony was more dramatic than that of Deputy Ackerman's, and there is some support in the record for Davis's contention that the deputies' accounts are not fully consistent.[2] But "prov[ing] that a finding is clearly erroneous . . . requires more than a showing of conflicting testimony." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004). So, the district court didn't clearly err by finding Deputy Smith

---

[1] The district court based its finding that Davis reached for an object in the backseat solely on Deputy Smith's testimony. Yet as Davis points out, Deputy Smith conceded on cross-examination that his report did not mention Davis "making any sort of reaching movements" even though such an important fact "probably should have been there." R. 24, Pg. ID 173. Nor did Deputy Ackerman mention any reaching by Davis, even though he was in front of Deputy Smith during this incident and thus had as good (if not better) a view of Davis's movements. A factfinder could have reasonably declined to credit Deputy Smith based on these inconsistencies. But reviewing the evidence in the light most favorable to the government as we must, we cannot say that Deputy Smith's testimony as a whole is so "implausible, internally inconsistent, or against the weight of the evidence, such that no reasonable fact-finder would credit it." *United States v. Braswell*, 704 F. App'x 528, 533 (6th Cir. 2017) (quotation marks omitted).

[2] Most notably, Deputy Smith testified that the deputies "pulled [Davis] out of the driver's side door of the car." R. 24, Pg. ID 149. Deputy Ackerman, however, agreed with defense counsel that Davis ultimately exited the vehicle "on his own accord." *Id.* at 192. And as discussed previously, Deputy Smith (but not Deputy Ackerman) mentioned that Davis reached for an unknown object in the backseat while resisting the deputies' efforts to remove him from the car.

credible or by adopting one permissible view of the evidence. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573–75 (1985); *United States v. Crawford*, 943 F.3d 297, 310 (6th Cir. 2019). Based on the facts as the district court found them, Deputy Ackerman was thus entitled to ask Davis if there was anything dangerous within reach.

B.

Davis also claims the deputies unlawfully searched the vehicle. *See* U.S. Const. amend. IV. Specifically, he contends that the Government failed to satisfy either of *Arizona v. Gant*'s search-incident-to-arrest exceptions to the probable cause requirement. 556 U.S. 332, 343–44 (2009). But the district court didn't rely on the *Gant* exceptions. It didn't need to: the court found that the deputies had probable cause to search Davis's car.

We agree. Police can conduct a warrantless search of a vehicle so long as they have probable cause to believe they will find evidence of criminal wrongdoing inside. *Carroll v. United States*, 267 U.S. 132, 149 (1925). When combined with his nervous demeanor, disobedience, and erratic behavior, Davis's admission that there were drugs and a gun in the car provided ample probable cause. *See United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012); *United States v. Stevenson*, 43 F.4th 641, 643, 648 (6th Cir. 2022). Thus, the deputies' search was constitutional.

We affirm.