STATE v. BALLENGER
2022 OK CR 11
Case Number: S-2021-835
Decided: 06/30/2022
STATE OF OKLAHOMA, Appellant v. CLAY A. BALLENGER, Appellee
Cite as: 2022 OK CR 11, __ __

 

OPINION
HUDSON, VICE PRESIDING JUDGE:
¶1 On May 11, 2021, Appellee, Clay A. Ballenger, was charged with misdemeanor Driving Under the Influence of Alcohol, in violation of , in Tulsa County District Court, Case No. CM-2021-1695. On June 27, 2021, Ballenger filed a Motion to Suppress Evidence and Brief in Support challenging, inter alia, the legality of his warrantless arrest. A hearing on Ballenger's motion was held on July 23, 2021. After hearing testimony from multiple witnesses and argument from both parties, the Honorable J. Anthony Miller, Special Judge, took the matter under advisement. On August 2, 2021, Judge Miller sustained Ballenger's motion finding that Ballenger's warrantless arrest violated and suppressed all evidence flowing from the arrest.
¶2 Appellant, the State of Oklahoma, now appeals. We exercise jurisdiction pursuant to (5). For the reasons discussed below, we reverse the district court's ruling and remand for further proceedings consistent with this opinion.
BACKGROUND
¶3 The State presented five witnesses at the hearing on Ballenger's motion to suppress. What follows is a summary of the State's evidence relating to the events surrounding Ballenger's arrest.
¶4 On August 27, 2020, around 9:30 p.m., Andrew Peters and Damiana Haynes, both seventeen years old, were driving in the area of 101st and Yale in Tulsa when they observed a maroon F-150 truck run a red light while making an illegal left turn in a construction zone. After passing through the intersection, the couple's vehicle ended up behind the truck. The driver of the truck was later identified as Clay Ballenger, an off-duty Tulsa police officer.
¶5 Peters and Haynes observed Ballenger's truck repeatedly drive off the road "toward the trees" and into the grass. Peters would honk and the truck would return to "the correct lane" and then "go into the opposing [oncoming traffic] lane" and Peters would honk again. "Because the truck was swerving on and off the road[,]" the couple continued following the truck for a "couple miles" and into Ballenger's neighborhood. Ballenger ultimately pulled his truck into his driveway where his Tulsa police car was parked, striking the back bumper of the police car with his truck. Shortly thereafter, Ballenger opened the driver's side door, hung his leg out the door, and then went still.
¶6 Although the collision "wasn't that bad[,]" Haynes called 911 and reported what she and Peters had witnessed. Collectively, Haynes and Peters told the 911 operator, inter alia, that they had observed the truck run a red light, swerve all over the road, pull into a driveway and "straight up ram[ ] the cop car" that was parked in the driveway. Haynes explained that they had followed the truck to make sure the driver got home safely. She further described for the 911 operator how the driver was just sitting in his vehicle with his door partially opened and appeared to be passed out. From information provided by Haynes and Peters, the 911 operator quickly identified Lieutenant Ballenger as the driver of the truck and officers were dispatched to the scene. Haynes and Peters remained at the scene and spoke with the police when they arrived a short time later.
¶7 Tulsa Police Lieutenant Christopher Moudy was the first officer to arrive at the scene. Moudy made contact with the couple and obtained more details about what they observed. He then waited for Tulsa Police Captain Richard Meulenberg to arrive at the scene. Captain Meulenberg, the only shift commander working that night, was specifically called because the incident involved a Tulsa police officer. Meulenberg arrived around 10:00 p.m. and was briefed by Lt. Moudy. Afterward, Meulenberg approached the driver's side door of Ballenger's truck. Lieutenant Moudy served as his "backer" and stood approximately ten yards behind Meulenberg while he confronted Ballenger in his truck. Ballenger's truck door was "slightly open[ed]" and the vehicle was not running. Meulenberg shined his flashlight inside the vehicle and opened the door a bit more. Meulenberg and Moudy each recognized Ballenger sitting in the driver's seat. Ballenger was unconscious and there was no key in the ignition. Meulenberg shook Ballenger to wake him up. Ballenger smelled of alcohol and his speech was slow. It also took Ballenger "a little longer to answer questions."
¶8 Notably, Captain Meulenberg and Lieutenant Ballenger had known each other, both casually and professionally, for many years. Meulenberg was thus familiar with Ballenger's "manner of speech and the way he normally seems[.]" He had also observed Ballenger in the past when he was under the influence of alcohol. Based on his initial observations of Ballenger in his truck that night, Ballenger "appeared to be either under the influence [of alcohol] or . . . severely fatigued." However, after Meulenberg had the opportunity to further interact with Ballenger and observe his "behaviors, mannerisms, [ ] speech, [and] odor[,]" Meulenberg ruled out fatigue as the cause of Ballenger's questionable behavior. When Ballenger exited his truck, he was unsteady on his feet and Meulenberg had to help steady him. Further, Ballenger displayed a "longer gap of understanding" as Meulenberg spoke with him outside of his truck, and his responses to questions were notably delayed.
¶9 Tulsa Police Officer Jimmy Jones was called to the scene to assist due to his experience with DUIs. When he arrived, Ballenger was outside of his truck with Captain Meulenberg and Lieutenant Moudy. Like Meulenberg and Moudy, Jones recognized Ballenger when he saw him. Jones was wearing a face mask that covered his mouth and nostrils when he approached and made face-to-face contact with Ballenger. Despite his mask, Jones smelled an odor of alcohol coming from Ballenger. Jones further noted that Ballenger would "shut his eyes for at least ten seconds, and then he would open them slowly back up." When he did so, he would start to sway. Based on his training and experience, Jones found this significant, explaining that it is typical for intoxicated individuals to "lose their bearings of space" when they close their eyes, and "start to sway to try to gain balance."
¶10 All three officers at the scene observed that the front bumper of Ballenger's truck was touching the back bumper of his squad car. Lieutenant Moudy found Ballenger's keys under the driver's seat of his truck and moved the truck back a foot to see if there was any damage to either vehicle. No damage was observed. Moudy did not smell the odor of alcohol in Ballenger's vehicle when he retrieved the keys.
¶11 At Captain Meulenberg's direction, Officer Jones read Ballenger the Oklahoma Implied Consent Law from the standard form used by the Tulsa Police Department. As he did so, Ballenger just stared at Jones as if he was looking through him. Meulenberg described Ballenger's demeanor as follows:
[Ballenger] seemed to be . . . listening, but he seemed a bit confused about the questioning. . . . [H]e didn't answer the question. . . . [H]e asked for no clarification but didn't answer the question.
So we engaged in a elongated, you know, back-and-forth where I had asked him to answer the question because I could not answer the question for him. 
* * *
I asked several times, and [ ] he didn't make any statement. . . . [H]e had physical cues, that he seemed like he was hearing what I was saying. And then I told him a final time, I said, if you don't answer this question I'm going to take that as a refusal, and we are going to proceed.
(Tr. 46). Failing to respond, Ballenger was placed under arrest and transported to the Tulsa County jail by Meulenberg.
¶12 The State admitted seven exhibits into evidence, without objection--the 911 call; a photo of Haynes and Peters outside Ballenger's house talking with Lieutenant Moudy; a photo of Ballenger's truck and squad car parked in his driveway; Ballenger's mugshot; and the body camera footage of each officer's interactions with Ballenger that night.
¶13 Ballenger did not call any witnesses at the motion hearing, but admitted into evidence an internet printout purportedly containing the National Highway Traffic Safety Administration's definition of "accident."
¶14 Based on the evidence presented at the hearing and argument from counsel, the trial court ultimately found Ballenger's warrantless arrest violated and suppressed all evidence flowing from his arrest. In doing so, the trial court rejected the State's contention that Ballenger's arrest was lawful because he committed the crime of Actual Physical Control (APC), in violation of (A), in the presence of the officers. See (1) ("A peace officer may, without warrant, arrest a person . . . [f]or a public offense, committed or attempted in the officer's presence."). The court found that Ballenger's conduct fell short of APC because "when the officers arrived . . ., [Ballenger] was in his parked truck in his driveway with the engine turned off. He was not driving." Citing Shirey v. State, , , Judge Miller determined that the only evidence police had to support Ballenger's arrest was information from a third party. The court further found that the DUI accident exception in (5) was inapplicable because the collision only involved "incidental contact between [Ballenger's] truck and the police vehicle in his driveway."
DISCUSSION
¶15 The State brings this appeal under (5) and challenges the trial court's order quashing Ballenger's arrest and suppressing all evidence flowing from it. Section 1053(5) provides that the State may appeal "[u]pon a pretrial order, decision or judgment suppressing or excluding evidence where appellate review of the issue would be in the best interests of justice[.]" Because the State's ability to prosecute Ballenger is substantially impaired absent the suppressed evidence which forms a significant part of the State's case, we find that the best interests of justice warrants review of the State's appeal and our review here is appropriate. State v. Strawn, , ¶ 18, , 253.
¶16 In appeals brought to this Court pursuant to , this Court reviews the trial court's decision for an abuse of discretion. State v. Nelson, , ¶ 11, , 1117. "An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the issue; a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts." State v. Marcum, , ¶ 7, , 683. When reviewing a trial court's ruling, this Court defers to the trial court's findings of fact unless they are not supported by competent evidence and are therefore clearly erroneous. Nelson, , ¶ 11, 356 P.3d at 1117. We review the trial court's legal conclusions based on those facts de novo. Id.
¶17 The State's appeal raises two issues--(1) whether the trial court abused its discretion in determining that Ballenger's warrantless arrest was unlawful; and (2) if so, whether the trial court erred when it failed to apply the good faith exception to the exclusionary rule.
¶18 Warrantless arrests are governed by , which strictly limits the circumstances under which a warrantless misdemeanor arrest is permitted. "Absent one of the enumerated exceptions, a warrant must be obtained to arrest a person for a misdemeanor offense." State v. Iven, , ¶ 9, , 267. When the lawfulness of a warrantless misdemeanor arrest is challenged, the State bears the burden of proving that the challenged arrest falls within one of the enumerated statutory exceptions. Id., , ¶ 9, 335 P.3d at 268. The State argues on appeal, as it did below, that Ballenger's arrest was statutorily authorized by (1) because he committed the crime of APC in the presence of the officers. We agree.
¶19 "[A] peace officer may make a warrantless arrest for a misdemeanor based on his personal observations at the time, as long as the observations amount to probable cause for arrest[.]" Tomlin v. State, , ¶ 21, , 339. Probable cause for an arrest exists "when there are facts within the officer's knowledge sufficient to warrant a prudent man in believing that the subject has committed an offense[.]" Mike v. State, , ¶ 6, , 913. Probable cause may be established by circumstantial evidence, but it must be based on more than mere suspicion. See DeVooght v. State, , ¶ 11, , 709 (direct evidence is not required to prove probable cause); Ajeani v. State, , ¶ 4, , 823 ("[M]ere suspicion or subterfuge will [not] justify a warrantless misdemeanor arrest; nor will information supplied by a third person suffice."); Shirey, , ¶ 18, , 987 (same). The facts in this case show Ballenger's arrest was legally justified based on the personal observations of Captain Meulenberg and other officers at the scene that night at Ballenger's house.
¶20 The crime of actual physical control is committed when an intoxicated person has direct influence, i.e., control, over the vehicle, even if that person is unconscious. See OUJI-CR (2d) No. 6-20 (elements of APC); OUJI-CR (2d) No. 6-35 (defining "actual physical control"). See also Mason v. State, , ¶¶ 5-8, , 1148 (unconscious individual may be in actual physical control of an automobile). Beyond the information supplied by Peters and Haynes, police found Ballenger unconscious in the driver's seat of his truck with his keys nearby underneath his seat. When awakened and removed from his truck, Ballenger smelled of alcohol, was unsteady on his feet, and struggled to keep his eyes open. He displayed a "longer gap of understanding" when spoken to, and his response time to questions was notably delayed. While being read his rights under Oklahoma's implied consent law, Ballenger appeared confused by the situation and just stared. Further, Captain Meulenberg's past social interactions with Ballenger gave him a unique insight into Ballenger's mannerisms when "sober and not-sober." Based on Ballenger's behaviors, speech, and odor that night, Meulenberg concluded he was intoxicated. Officer Jones, drawing from his training and experience, likewise opined that Ballenger was under the influence of alcohol.
¶21 The officers' observations at the scene that night amounted to probable cause to arrest Ballenger for APC. That Ballenger's truck was parked in his own driveway with the engine turned off when officers arrived is not dispositive of whether Ballenger was in actual physical control of his vehicle that night. See State v. Silas, , ¶¶ 7-12, , 341-42 (finding driveways are "private roads" under ); Kyle v. State, , ¶¶ 5-7, , 1219 (despite the defendant having just exited his vehicle and the vehicle being turned off, a "reasonable inference" still could be made that he was "behind the wheel of the vehicle, before getting out, and that he could have started the vehicle and driven away"); Hughes v. State, , ¶¶ 4-8, , 1024 (even though the defendant was asleep in the front seat and the car engine was turned off, a "legitimate inference" could be drawn that the defendant "placed himself behind the wheel of the vehicle and could have at any time started the vehicle and driven away"). Contrary to the trial court's findings, Ballenger's misdemeanor arrest was based on more than the information provided by third parties or mere suspicion. Rather, the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent man in believing that Ballenger was in the commission of APC. See Mike, , ¶ 6, 761 P.2d at 913. From the officers' personal observations, a reasonable inference could be made that Ballenger was intoxicated, had direct influence over his truck, and could have driven away at any time. Ballenger's arrest thus was not without probable cause.
¶22 The State presented sufficient evidence to show probable cause existed to arrest Ballenger for actual physical control of a motor vehicle while intoxicated. Police lawfully effectuated a warrantless arrest of Ballenger pursuant to (1). Judge Miller's suppression of the evidence was an abuse of discretion. The district court's order granting the motion to suppress must be reversed and the matter remanded for further proceedings. This resolution renders moot the State's remaining claim regarding application of the good faith exception to the exclusionary rule.
DECISION
¶23 The District Court's order quashing Ballenger's arrest and suppressing the evidence derived from it is REVERSED and this case is REMANDED for further proceedings not inconsistent with this Opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.
AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE J. ANTHONY MILLER, SPECIAL JUDGE

APPEARANCES AT HEARING
KEVIN KELLER
ASSISTANT DISTRICT ATTORNEY
TULSA COUNTY COURTHOUSE
500 S. DENVER AVE., STE. 900
TULSA, OK 74103-3838
COUNSEL FOR THE STATE

APPEARANCES ON APPEAL
KEVIN KELLER
ASSISTANT DISTRICT ATTORNEY
TULSA COUNTY COURTHOUSE
500 S. DENVER AVE., STE. 900
TULSA, OK 74103-3838
COUNSEL FOR APPELLANT

JASON EDGE
EDGE LAW FIRM, P.C.
15 WEST 6TH ST., STE. 2304
TULSA, OK 74119
COUNSEL FOR DEFENDANT

JASON EDGE
BRIAN K. MORTON
EDGE LAW FIRM, P.C.
15 WEST 6TH
TULSA, OK 74119
COUNSEL FOR APPELLE
 
OPINION BY: HUDSON, V.P.J. ROWLAND, P.J.: CONCUR
LUMPKIN, J.: CONCUR
LEWIS, J.: DISSENT
MUSSEMAN, J.: CONCUR
FOOTNOTES
 Notably, Ballenger argues on appeal that this Court erred in its decision in Silas. We are unpersuaded by Ballenger's argument and decline his invitation to revisit this issue.

LEWIS, J., Dissent:
¶1 This case is about the suppression of evidence and nothing more. The opinion, however, goes far afield and expands the Court's holding in State v. Silas, , , in which I dissented.
¶2 Initially, I would not have granted an appeal in this case. Sufficient admissible evidence exists for the State to proceed to trial against the defendant for the crime of driving under the influence of an intoxicating substance as outlined in the opinion.
¶3 The right of the State to appeal is strictly limited. This limitation protects individuals "from the harassment and vexation of unbounded litigation by the sovereign." Arizona v. Manypenny, 451 U.S. 232, 246 (1981). This concern also underlies the ban against double jeopardy. Id. No appellate right by the government exists, absent express legislative intent. Id. at 246; State v. Shepherd, , ¶ 9, , 647 (the State's right to appeal is authorized by statute, which cannot be enlarged by construction).
¶4 Title (5), allows an appeal of a suppression of evidence where review of the issue would be in the best interests of justice. This is not such a case. See State v. Sayerwinnie, , ¶ 6, , (defining "the phrase 'best interests of justice' to mean that the evidence suppressed forms a substantial part of the proof of the pending charge, and the State's ability to prosecute the case is substantially impaired or restricted absent the suppressed or excluded evidence."). The State has made no showing, either at the trial court or in its appeal brief, that it cannot proceed without the suppressed evidence. This showing is foundational to this appeal. This appeal, therefore, must be dismissed.
¶5 However, since the majority chooses to allow this appeal, making its own finding, weighing the evidence de novo, and determining that the suppressed evidence substantially impairs the State's ability to prosecute its case, I will address the fallacy of the opinion.
¶6 But first I would like to note my dissent in Silas and the continued dangers of following its holding. Imagine for a moment, you are sitting in your home, consuming adult beverages, and possibly becoming legally intoxicated. Your car keys are in your pocket, and you remember that you left something in your car, which is parked in the driveway of your modest, average home. You walk out and open the car door, and maybe you sit in the car seat, or just reach inside. Oh, and remember that misdemeanor DUI you pled guilty to a few years back? Well, I'm sorry to inform you that you have just committed felony actual physical control (APC), punishable by imprisonment in the State Penitentiary. All of this is possible due to this Court's holding here.
¶7 The majority uses this appeal to delve into subjects not before this Court. This case is merely a case of whether evidence should have been suppressed. If a misdemeanor was committed in an officer's presence any evidence flowing from the arrest for that misdemeanor is admissible. If the misdemeanor was not committed in the officer's presence, then any evidence obtained after the defendant was arrested by the officer should be suppressed, clearly. That evidence is minimal in this case.
¶8 The two questions presented -- whether a person can be charged with APC while sitting in their own private driveway or whether there is sufficient evidence to prove that this defendant committed DUI on a public or private roadway -- can simply be answered no and yes. Obviously, to the first question, I say no based on my dissent in Silas. The second question requires an analysis of the weight of the evidence obtained before the defendant was taken into custody. Obviously, it is the State's choice to proceed to trial without the suppressed evidence, not this Court's.
¶9 The facts are correctly set forth in the opinion. The trial court did not make an erroneous finding of fact in this case. Nor did the trial court rule that the evidence obtained prior to the arrest was insufficient for the State to proceed to trial on the DUI charge. I would, therefore, find that the trial court did not abuse its discretion. I would affirm the trial court's order suppressing the evidence.