STATE v. BALLENGER
2022 OK CR 11
Case Number: S-2021-835
Decided: 06/30/2022
STATE OF OKLAHOMA, Appellant v. CLAY A. BALLENGER, Appellee
Cite as: 2022 OK CR 11, __ __

 

 

OPINION

HUDSON, VICE PRESIDING JUDGE:

¶1 On May 11, 2021, Appellee, Clay A. Ballenger, was charged with misdemeanor Driving Under the Influence of Alcohol, in violation of 47 O.S.Supp.2018, § 11-902Motion to Suppress Evidence and Brief in Support challenging, inter alia, the legality of his warrantless arrest. A hearing on Ballenger's motion was held on July 23, 2021. After hearing testimony from multiple witnesses and argument from both parties, the Honorable J. Anthony Miller, Special Judge, took the matter under advisement. On August 2, 2021, Judge Miller sustained Ballenger's motion finding that Ballenger's warrantless arrest violated 22 O.S.Supp.2014, § 196

¶2 Appellant, the State of Oklahoma, now appeals. We exercise jurisdiction pursuant to 22 O.S.2021, § 1053

BACKGROUND

¶3 The State presented five witnesses at the hearing on Ballenger's motion to suppress. What follows is a summary of the State's evidence relating to the events surrounding Ballenger's arrest.

¶4 On August 27, 2020, around 9:30 p.m., Andrew Peters and Damiana Haynes, both seventeen years old, were driving in the area of 101st and Yale in Tulsa when they observed a maroon F-150 truck run a red light while making an illegal left turn in a construction zone. After passing through the intersection, the couple's vehicle ended up behind the truck. The driver of the truck was later identified as Clay Ballenger, an off-duty Tulsa police officer.

¶5 Peters and Haynes observed Ballenger's truck repeatedly drive off the road "toward the trees" and into the grass. Peters would honk and the truck would return to "the correct lane" and then "go into the opposing [oncoming traffic] lane" and Peters would honk again. "Because the truck was swerving on and off the road[,]" the couple continued following the truck for a "couple miles" and into Ballenger's neighborhood. Ballenger ultimately pulled his truck into his driveway where his Tulsa police car was parked, striking the back bumper of the police car with his truck. Shortly thereafter, Ballenger opened the driver's side door, hung his leg out the door, and then went still.

¶6 Although the collision "wasn't that bad[,]" Haynes called 911 and reported what she and Peters had witnessed. Collectively, Haynes and Peters told the 911 operator, inter alia, that they had observed the truck run a red light, swerve all over the road, pull into a driveway and "straight up ram[ ] the cop car" that was parked in the driveway. Haynes explained that they had followed the truck to make sure the driver got home safely. She further described for the 911 operator how the driver was just sitting in his vehicle with his door partially opened and appeared to be passed out. From information provided by Haynes and Peters, the 911 operator quickly identified Lieutenant Ballenger as the driver of the truck and officers were dispatched to the scene. Haynes and Peters remained at the scene and spoke with the police when they arrived a short time later.

¶7 Tulsa Police Lieutenant Christopher Moudy was the first officer to arrive at the scene. Moudy made contact with the couple and obtained more details about what they observed. He then waited for Tulsa Police Captain Richard Meulenberg to arrive at the scene. Captain Meulenberg, the only shift commander working that night, was specifically called because the incident involved a Tulsa police officer. Meulenberg arrived around 10:00 p.m. and was briefed by Lt. Moudy. Afterward, Meulenberg approached the driver's side door of Ballenger's truck. Lieutenant Moudy served as his "backer" and stood approximately ten yards behind Meulenberg while he confronted Ballenger in his truck. Ballenger's truck door was "slightly open[ed]" and the vehicle was not running. Meulenberg shined his flashlight inside the vehicle and opened the door a bit more. Meulenberg and Moudy each recognized Ballenger sitting in the driver's seat. Ballenger was unconscious and there was no key in the ignition. Meulenberg shook Ballenger to wake him up. Ballenger smelled of alcohol and his speech was slow. It also took Ballenger "a little longer to answer questions."

¶8 Notably, Captain Meulenberg and Lieutenant Ballenger had known each other, both casually and professionally, for many years. Meulenberg was thus familiar with Ballenger's "manner of speech and the way he normally seems[.]" He had also observed Ballenger in the past when he was under the influence of alcohol. Based on his initial observations of Ballenger in his truck that night, Ballenger "appeared to be either under the influence [of alcohol] or . . . severely fatigued." However, after Meulenberg had the opportunity to further interact with Ballenger and observe his "behaviors, mannerisms, [ ] speech, [and] odor[,]" Meulenberg ruled out fatigue as the cause of Ballenger's questionable behavior. When Ballenger exited his truck, he was unsteady on his feet and Meulenberg had to help steady him. Further, Ballenger displayed a "longer gap of understanding" as Meulenberg spoke with him outside of his truck, and his responses to questions were notably delayed.

¶9 Tulsa Police Officer Jimmy Jones was called to the scene to assist due to his experience with DUIs. When he arrived, Ballenger was outside of his truck with Captain Meulenberg and Lieutenant Moudy. Like Meulenberg and Moudy, Jones recognized Ballenger when he saw him. Jones was wearing a face mask that covered his mouth and nostrils when he approached and made face-to-face contact with Ballenger. Despite his mask, Jones smelled an odor of alcohol coming from Ballenger. Jones further noted that Ballenger would "shut his eyes for at least ten seconds, and then he would open them slowly back up." When he did so, he would start to sway. Based on his training and experience, Jones found this significant, explaining that it is typical for intoxicated individuals to "lose their bearings of space" when they close their eyes, and "start to sway to try to gain balance."

¶10 All three officers at the scene observed that the front bumper of Ballenger's truck was touching the back bumper of his squad car. Lieutenant Moudy found Ballenger's keys under the driver's seat of his truck and moved the truck back a foot to see if there was any damage to either vehicle. No damage was observed. Moudy did not smell the odor of alcohol in Ballenger's vehicle when he retrieved the keys.

¶11 At Captain Meulenberg's direction, Officer Jones read Ballenger the Oklahoma Implied Consent Law from the standard form used by the Tulsa Police Department. As he did so, Ballenger just stared at Jones as if he was looking through him. Meulenberg described Ballenger's demeanor as follows:

[Ballenger] seemed to be . . . listening, but he seemed a bit confused about the questioning. . . . [H]e didn't answer the question. . . . [H]e asked for no clarification but didn't answer the question.

So we engaged in a elongated, you know, back-and-forth where I had asked him to answer the question because I could not answer the question for him.

* * *

I asked several times, and [ ] he didn't make any statement. . . . [H]e had physical cues, that he seemed like he was hearing what I was saying. And then I told him a final time, I said, if you don't answer this question I'm going to take that as a refusal, and we are going to proceed.

(Tr. 46). Failing to respond, Ballenger was placed under arrest and transported to the Tulsa County jail by Meulenberg.

¶12 The State admitted seven exhibits into evidence, without objection--the 911 call; a photo of Haynes and Peters outside Ballenger's house talking with Lieutenant Moudy; a photo of Ballenger's truck and squad car parked in his driveway; Ballenger's mugshot; and the body camera footage of each officer's interactions with Ballenger that night.

¶13 Ballenger did not call any witnesses at the motion hearing, but admitted into evidence an internet printout purportedly containing the National Highway Traffic Safety Administration's definition of "accident."

¶14 Based on the evidence presented at the hearing and argument from counsel, the trial court ultimately found Ballenger's warrantless arrest violated 22 O.S.Supp.2014, § 19647 O.S.Supp.2018. § 11-902See 22 O.S.Supp.2014, § 196Shirey v. State, 1957 OK CR 100321 P.2d 98122 O.S.Supp.2014, § 196

DISCUSSION

¶15 The State brings this appeal under 22 O.S.2021, § 1053State v. Strawn, 2018 OK CR 2419 P.3d 249

¶16 In appeals brought to this Court pursuant to 22 O.S.2021, § 1053State v. Nelson, 2015 OK CR 10356 P.3d 1113State v. Marcum, 2014 OK CR 1319 P.3d 681Nelson, 2015 OK CR 10de novo. Id.

¶17 The State's appeal raises two issues--(1) whether the trial court abused its discretion in determining that Ballenger's warrantless arrest was unlawful; and (2) if so, whether the trial court erred when it failed to apply the good faith exception to the exclusionary rule.

¶18 Warrantless arrests are governed by 22 O.S.Supp.2014, § 196State v. Iven, 2014 OK CR 8335 P.3d 264Id., 2014 OK CR 822 O.S.Supp.2014, § 196

¶19 "[A] peace officer may make a warrantless arrest for a misdemeanor based on his personal observations at the time, as long as the observations amount to probable cause for arrest[.]" Tomlin v. State, 1994 OK CR 14869 P.2d 334Mike v. State, 1988 OK CR 205761 P.2d 911See DeVooght v. State, 1986 OK CR 100722 P.2d 705Ajeani v. State, 1980 OK CR 29610 P.2d 820Shirey, 1957 OK CR 100321 P.2d 981

¶20 The crime of actual physical control is committed when an intoxicated person has direct influence, i.e., control, over the vehicle, even if that person is unconscious. See OUJI-CR (2d) No. 6-20 (elements of APC); OUJI-CR (2d) No. 6-35 (defining "actual physical control"). See also Mason v. State, 1979 OK CR 132603 P.2d 1146

¶21 The officers' observations at the scene that night amounted to probable cause to arrest Ballenger for APC. That Ballenger's truck was parked in his own driveway with the engine turned off when officers arrived is not dispositive of whether Ballenger was in actual physical control of his vehicle that night. See State v. Silas, 2020 OK CR 10470 P.3d 33947 O.S.Supp.2018, § 11-902Kyle v. State, 1986 OK CR 117722 P.2d 1218Hughes v. State, 1975 OK CR 83535 P.2d 1023See Mike, 1988 OK CR 205

¶22 The State presented sufficient evidence to show probable cause existed to arrest Ballenger for actual physical control of a motor vehicle while intoxicated. Police lawfully effectuated a warrantless arrest of Ballenger pursuant to 22 O.S.Supp.2014, § 196

DECISION

¶23 The District Court's order quashing Ballenger's arrest and suppressing the evidence derived from it is REVERSED and this case is REMANDED for further proceedings not inconsistent with this Opinion. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE J. ANTHONY MILLER, SPECIAL JUDGE

 

 
 
 
 APPEARANCES AT HEARING

 KEVIN KELLER

 ASSISTANT DISTRICT ATTORNEY
 TULSA COUNTY COURTHOUSE
 500 S. DENVER AVE., STE. 900
 TULSA, OK 74103-3838
 COUNSEL FOR THE STATE
 
 
 APPEARANCES ON APPEAL

 KEVIN KELLER
 ASSISTANT DISTRICT ATTORNEY
 TULSA COUNTY COURTHOUSE
 500 S. DENVER AVE., STE. 900
 TULSA, OK 74103-3838
 COUNSEL FOR APPELLANT
 
 
 
 
 JASON EDGE
 EDGE LAW FIRM, P.C.
 15 WEST 6TH ST., STE. 2304
 TULSA, OK 74119
 COUNSEL FOR DEFENDANT
 
 
 JASON EDGE
 BRIAN K. MORTON
 EDGE LAW FIRM, P.C.
 15 WEST 6TH ST., STE. 2304
 TULSA, OK 74119
 COUNSEL FOR APPELLE
 
 
 

 

OPINION BY: HUDSON, V.P.J. 
ROWLAND, P.J.: CONCUR
LUMPKIN, J.: CONCUR
LEWIS, J.: DISSENT
MUSSEMAN, J.: CONCUR

FOOTNOTES

Silas. We are unpersuaded by Ballenger's argument and decline his invitation to revisit this issue.

 

 

LEWIS, J., Dissent:

¶1 This case is about the suppression of evidence and nothing more. The opinion, however, goes far afield and expands the Court's holding in State v. Silas, 2020 OK CR 10470 P.3d 339

¶2 Initially, I would not have granted an appeal in this case. Sufficient admissible evidence exists for the State to proceed to trial against the defendant for the crime of driving under the influence of an intoxicating substance as outlined in the opinion.

¶3 The right of the State to appeal is strictly limited. This limitation protects individuals "from the harassment and vexation of unbounded litigation by the sovereign." Arizona v. Manypenny, 451 U.S. 232, 246 (1981). This concern also underlies the ban against double jeopardy. Id. No appellate right by the government exists, absent express legislative intent. Id. at 246; State v. Shepherd, 1992 OK CR 69840 P.2d 644

¶4 Title 22 O.S.2011, § 1053See State v. Sayerwinnie, 2007 OK CR 11157 P.3d 137

¶5 However, since the majority chooses to allow this appeal, making its own finding, weighing the evidence de novo, and determining that the suppressed evidence substantially impairs the State's ability to prosecute its case, I will address the fallacy of the opinion.

¶6 But first I would like to note my dissent in Silas and the continued dangers of following its holding. Imagine for a moment, you are sitting in your home, consuming adult beverages, and possibly becoming legally intoxicated. Your car keys are in your pocket, and you remember that you left something in your car, which is parked in the driveway of your modest, average home. You walk out and open the car door, and maybe you sit in the car seat, or just reach inside. Oh, and remember that misdemeanor DUI you pled guilty to a few years back? Well, I'm sorry to inform you that you have just committed felony actual physical control (APC), punishable by imprisonment in the State Penitentiary. All of this is possible due to this Court's holding here.

¶7 The majority uses this appeal to delve into subjects not before this Court. This case is merely a case of whether evidence should have been suppressed. If a misdemeanor was committed in an officer's presence any evidence flowing from the arrest for that misdemeanor is admissible. If the misdemeanor was not committed in the officer's presence, then any evidence obtained after the defendant was arrested by the officer should be suppressed, clearly. That evidence is minimal in this case.

¶8 The two questions presented -- whether a person can be charged with APC while sitting in their own private driveway or whether there is sufficient evidence to prove that this defendant committed DUI on a public or private roadway -- can simply be answered no and yes. Obviously, to the first question, I say no based on my dissent in Silas. The second question requires an analysis of the weight of the evidence obtained before the defendant was taken into custody. Obviously, it is the State's choice to proceed to trial without the suppressed evidence, not this Court's.

¶9 The facts are correctly set forth in the opinion. The trial court did not make an erroneous finding of fact in this case. Nor did the trial court rule that the evidence obtained prior to the arrest was insufficient for the State to proceed to trial on the DUI charge. I would, therefore, find that the trial court did not abuse its discretion. I would affirm the trial court's order suppressing the evidence.