OSCN Found Document:STATE v. RUSSELL

 

 
 STATE v. RUSSELL2026 OK CR 15Case Number: S-2025-48Decided: 04/16/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 15, __ P.3d __

 

THE STATE OF OKLAHOMA, Appellant,
v.
CODY OWEN RUSSELL, Appellee.

 

SUMMARY OPINION

ROWLAND, JUDGE:

¶1 The State of Oklahoma appeals the district court's suppression order, suppressing Appellee Cody Owen Russell's statements to police in Kay County District Court Case No. CF-2024-67. Miranda while standing outside his house as a search warrant was executed inside, the Honorable David R. Bandy, Associate District Judge, suppressed all of Russell's unwarned statements made to police during the search, ruling from the bench:

I'm going to grant the suppression of any statements by the defendant. I think he believed that he was not free to leave. . . . I want to make it abundantly clear that this Court finds absolutely no wrongdoing on behalf of the Blackwell Police Department at all. My ruling only goes to the fact that I believe that the facts surrounding what I just heard, that the defendant didn't feel free to go. So that's the only ruling.

¶2 We find that the district court abused its discretion by (1) employing the wrong legal standard for custody under Miranda, and (2) analyzing the issue from Russell's subjective viewpoint rather than from an objective viewpoint. See State v. Roberson, 2021 OK CR 16492 P.3d 620

A. Jurisdiction

¶3 This appeal is brought pursuant to 22 O.S.Supp.2022, § 105321 O.S.2021, § 13.1Crawford v. State, 2026 OK CR 4Crawford was a fragmented decision with four separate opinions, the majority concluded that pre-trial rulings suppressing or excluding evidence based on alleged violations of one's constitutional rights fall within the ambit of that statute. Whatever else Section 1053(6) encompasses, it clearly allows a State to appeal when the remedy of suppression or exclusion is applied by the trial court after finding a violation of some right guaranteed by the Constitution. In this case, that right is the Fifth Amendment right to remain silent. See Dickerson v. United States, 530 U.S. 428, 440 (2000) (observing Miranda was a constitutionally based decision which safeguards one's Fifth Amendment right against self-incrimination). This appeal is properly before us.

B. Background

¶4 On September 25, 2023, Blackwell Police Officers executed a search warrant on Russell's residence searching for evidence of child pornography. Finding no one at home and knowing that Russell worked at the Blackwell Walmart store, Deputy Chief Bell went to Walmart, spoke with Russell's supervisor, and then spoke with Russell to inform him a search warrant was being executed at his home. Deputy Chief Bell testified at the motion hearing that he "asked him to come to the residence." Russell testified at the same hearing that Bell told him "[w]e need you to come back to your house with us." Both Bell and Russell agree that Russell was not forced to ride in Bell's police vehicle and that he drove to his residence in his own vehicle, followed by Bell. Russell testified that although he was not told he was required to accompany Bell to his house, "I didn't feel like I had a choice."

¶5 Both agree that when they arrived at the house which was about five minutes away, Russell stood toward the bottom of the front steps or on the ground while Bell, and at times another officer or two, stood on the steps or on the porch. A photograph admitted at the suppression hearing shows Russell standing on the grass and sidewalk about three feet from his porch, one officer standing on the steps, and two others standing on the porch.

¶6 The record shows that at least one police officer was present out in front of the residence the whole time that Russell was standing there, which both sides agree was about an hour. Both sides also agree that Russell was never handcuffed nor physically restrained at any time, that he was not allowed inside the residence while it was being searched, and that he was never told he had to stay there nor that he could leave. Russell also testified that upon his arrival at his house an officer took and searched his cell phone as well as the car he arrived in. Russell, without receipt of any Miranda warning, answered the officers' questions about the contents of the property, the ownership of electronic devices, and the internet and passcodes, including the code to a safe.

¶7 Russell was not arrested that day. The record shows that his electronic devices were forensically examined over the next few months. On February 6, 2024, the State filed an Information charging him with a single count of aggravated possession of child pornography in violation of 21 O.S.2021, § 1040.12a

C. Analysis

1. 

¶8 Russell maintained at the suppression hearing that his unwarned statements were involuntary and inadmissible because he was in custody while he waited or was detained outside his residence. The district court found Russell felt detained and suppressed his answers to the officers' questions since he was not given Miranda warnings.

¶9 It axiomatic that any statement made by one who is interrogated while in custody must be preceded by a valid Miranda warning and waiver before that statement is admissible in the state's case-in-chief. Miranda, 384 U.S. at 444, 471, 478-79. A person is in custody whenever "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)); see also New York v. Quarles, 467 U.S. 649, 655 (1984).

¶10 Russell lists eight factors he contends established that he was in custody at the time he was asked and answered questions while standing on his own lawn during the execution of the search warrant. These include: (1) Detective Ingram sent Officer Bell "to go get" him from his place of employment; (2) Officer Bell escorted him outside his place of employment to his parked car; (3) Officer Bell escorted him back to his house; (4) Officer Bell took control/possession of his car; (5) Officer Bell took his cell phone; (6) Officer Bell and/or another Blackwell Police Officer remained with him on the porch of his house the entire time; (7) he was denied access to his house during the search; and (8) Officer Bell asked Detective Ingram towards the end of the interaction some variation of "do you want to cut him loose or should we keep him here." 

¶11 Russell concludes from these factors that he was in custody because no reasonable person in that situation would have felt free "to terminate the interrogation and leave." He cites Thompson v. Keohane, 516 U.S. 99, 112 (1995) for this statement of Miranda's custody test, and focusing solely on that sentence one might conclude that a person is in custody for Miranda purposes anytime they do not subjectively feel free to leave. However, an examination of the entire passage in Thompson reveals that the "free to leave" language refers to the analytical process to be used in reaching the ultimate issue, which is whether there was a restraint on one's freedom of movement to a degree normally associated with a formal arrest. Thompson, 516 U.S. at 112 (emphasis added).

Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 . . . (quoting Mathiason, 429 U.S., at 495 . . .).

Thompson, 516 U.S. at 112 (emphasis added) (footnote omitted). Thompson did not alter the legal definition of custody (restraint on freedom of movement to a degree associated with a formal arrest) which has been the law since at least 1977's Mathiason decision. Custody requires more than a showing that one is temporarily detained and not free to go; it requires a showing that the freedom of movement is restrained to a degree more like an arrest than an investigative detention. See Quarles, 467 U.S. at 655; Beheler, 463 U.S. at 1125, Mathiason, 429 U.S. at 495. 

¶12 In Berkemer v. McCarty, 468 U.S. 420, 436, 440 (1984), the Supreme Court distinguished custody from lesser detentions, holding that Miranda warnings are not required during roadside questioning during a traffic stop, even though no reasonable person would feel free to refuse an officer's attempts to stop their vehicle. This Court has applied Berkemer to find that questioning of a defendant in a police car during an investigative detention was non-custodial. Casey v. State, 1987 OK CR 12732 P.2d 885Howes v. Fields, 565 U.S. 499, 517 (2012), the Supreme Court found it possible to have a non-custodial interview of a defendant incarcerated in prison, stating '"[o]ur cases make clear . . . that the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody.'" Howes, 565 U.S. at 509 (quoting Maryland v. Shatzer, 559 U.S. 98, 112 (2010)).

¶13 This is not to say that all detentions falling short of an arrest are non-custodial, and Russell cites United States v. Revels, 510 F.3d 1269, 1275 (10th Cir. 2007) in support of his position that he was in custody. In Revels, the Tenth Circuit held its "analysis of the circumstances is an objective one; we ask whether 'a reasonable [person] in the suspect's position would have understood [her] situation . . . as the functional equivalent of formal arrest.'" Revels, 510 F.3d at 1273 (quoting McCarty, 468 U.S. at 442).

First, a reasonable person in Revels' position would have perceived a police-dominated atmosphere. Relatively early in the morning, at approximately 6:00 a.m., seven police officers abruptly roused Revels and Murphy from their bedroom after forcibly entering their home. Revels was immediately detained, restrained in handcuffs, and placed face down on the floor. She was made to sit under the supervision of officers while police executed the search warrant. Then, before any questioning began, three male officers separated Revels from her boyfriend and two children, and escorted her to a rear bedroom for questioning. Once inside the room, the officers isolated Revels from the other occupants of the home, and closed the door behind her. For much of the interview, all three of the officers remained in the room with Revels. Taken together, these facts demonstrate that the police were unequivocally in control of the circumstances both before and during Revels' questioning.

Revels, 510 F.3d at 1275.

¶14 We do not find that Revels requires or even suggests a result different from that which we reach here. These cases are necessarily fact-driven, and we see nothing in this record from which a reasonable person in Russell's circumstances would have seen them as the functional equivalent of a formal arrest. 

2.

¶15 The district court also abused its discretion in judging the issue of custody from Russell's subjective viewpoint. The Supreme Court, the Tenth Circuit Court of Appeals, and this Court have long held that in determining custody the factors are to be viewed objectively. "Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994); see also Revels, 510 F.3d at 1273 (observing the analysis of the circumstances is an objective one).

A person is in custody for purposes of Miranda when there is "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." The relevant inquiry as to whether a suspect is in custody is how a reasonable person in the suspect's position would have understood the situation.

Norman v. State, 2023 OK CR 4528 P.3d 1142Mason v. State, 2018 OK CR 37433 P.3d 1264

¶16 For these reasons we find the district court abused its discretion in holding that because Russell subjectively believed he was not free to leave his front lawn, he was in custody for purposes of Miranda. We reverse the district court's suppression order suppressing Russell's statements and remand this case for proceedings not inconsistent with this opinion.

DECISION

¶17 The order of the District Court suppressing Appellee Russell's statements in Case No. CF-2024-67 is REVERSED and the matter REMANDED to the district court for further proceedings not inconsistent with this decision. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2026), the MANDATE is ORDERED issued upon the filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF KAY COUNTY
THE HONORABLE DAVID R. BANDY
ASSOCIATE DISTRICT JUDGE

 
 
 APPEARANCES IN TRIAL COURT
 
 ROBERT DAVIS
 ASST. DISTRICT ATTORNEY
 KAY COUNTY COURTHOUSE
 201 S. MAIN ST.
 NEWKIRK, OK 74647
 COUNSEL FOR STATE
 
 
 JARROD STEVENSON
 STEVENSON LAW FIRM PLLC
 P. O. BOX 2260
 OKLAHOMA CITY, OK 73101
 COUNSEL FOR DEFENDANT
 APPEARANCES ON APPEAL
 
 BRIAN T. HERMANSON
 DISTRICT ATTORNEY
 ROBERT DAVIS
 ASST. DISTRICT ATTORNEY
 201 S. MAIN ST.
 NEWKIRK, OK 74647
 COUNSEL FOR APPELLANT
 
 JARROD STEVENSON
 STEVENSON LAW FIRM PLLC
 P. O. BOX 2260
 OKLAHOMA CITY, OK 73101
 COUNSEL FOR APPELLEE
 
 

 

OPINION BY: ROWLAND, J.
LUMPKIN, P.J.: Concur
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur
HUDSON, J.: Concur in Part/Dissent in Part
 

FOOTNOTES

Jackson v. Denno, 378 U.S. 368 (1964), to evaluate the voluntariness of his statements to police during the search of his home.

Miranda v. Arizona, 384 U.S. 436 (1966).

Miranda warnings prior to any questioning. Being detained is not synonymous with being in custody, and one may be temporarily detained by police without it rising to the level of custody triggering the framework of Miranda. See Michigan v. Summers, 452 U.S. 692, 705 (1981) (holding officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted"); Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Summers, 452 U.S. at 705 n.19) ("An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'"); Rochon v. State, 2008 OK CR 1176 P.3d 362Bryan v. State, 1997 OK CR 15935 P.2d 338

HUDSON, J., CONCURRING IN PART AND DISSENTING IN PART:

¶1 I concur in part, and dissent in part, from today's decision finding jurisdiction over this appeal pursuant to 22 O.S.Supp.2022, § 1053State v. Crawford, 2026 OK CR 4Crawford itself, defies the plain language of Section 1053(6) along with the legislative intent for this provision, and is forged by policy considerations that are beyond the purview of proper statutory analysis. See id. at ¶¶ 15-18; id. at ¶¶ 1-4 (Hudson, J., dissenting).

¶2 The majority also, for the first time since Crawford, extends jurisdiction under Section 1053(6) to a non-constitutional violation, which makes the basis for the rule announced in Crawford even more confusing. The district court in the present case ruled that Appellee's unwarned statements to the police must be suppressed because of Appellee's perception that he was not free to leave during the questioning, resulting in custodial interrogation that violated the rule stated in Miranda v. Arizona 384 U.S. 436 (1966). The district court emphasized in its ruling, however, that it found absolutely no wrongdoing by the police officers in this case.

¶3 A violation of the Miranda rule is not tantamount to a violation of the Fifth Amendment right against compelled self-incrimination, and in fact sweeps more broadly than the amendment itself. Because there was no finding of a constitutional violation by the trial judge, it is difficult to understand the majority's approach to this case after Crawford. Ironically, there is no question that we have jurisdiction to hear this state appeal under a proper reading of Section 1053(6)'s plain statutory language. Under the doctrine of stare decisis, however, the majority's interpretation of Section 1053(6) governs. See 20 O.S.2021, § 31Crawford in the haphazard manner evident here, and to the use of the majority's jurisdictional analysis in Crawford itself, but otherwise concur in today's ruling.

I

¶4 "[T]he State can only bring this appeal if it is authorized by one of the limited instances listed in Section 1053 of Title 22 of the Oklahoma Statutes. This statutory authority cannot be enlarged by construction." State v. Gilchrist, 2017 OK CR 25422 P.3d 182Gilchrist, 2017 OK CR 25

¶5 The State urges that this appeal is appropriate under Section 1053(6). Title 22 O.S.Supp.2022, § 105321 O.S.2021, § 13.1Crawford, the trial court's decision suppressing the evidence here does not qualify for review under Section 1053(6) because the trial court did not find a constitutional violation, but instead suppressed Appellee's statements solely for the purported violation of Miranda.

II

¶6 To understand why our jurisdiction is lacking after Crawford, it is important to recognize that "a violation of Miranda does not necessarily constitute a violation of the Constitution[.]" Vega v. Tekoh, 597 U.S. 134, 150 (2022). "Miranda warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" Duckworth v. Eagan, 492 U.S. 195, 203 (1989) (quoting Michigan v. Tucker, 417 U.S. 433, 444 (1974)). This is why the Miranda rule is considered prophylactic in nature. E.g., Vega, 597 U.S. at 150. The suppression of unwarned statements during pretrial proceedings generally is sufficient to remedy a perceived violation of Miranda. Vega, 597 U.S. at 152.

¶7 The suppression of a defendant's statements because police violated the Miranda rule is different from a finding that his Fifth Amendment right against compelled self-incrimination was violated through police coercion. The Miranda decision has been described by the Supreme Court as a "constitutional decision" that "adopted a 'constitutional rule' about what was required to safeguard [the Fifth Amendment] constitutional right." Vega, 597 U.S. at 149. This constitutional rule is binding on the States under the Supremacy Clause and may not be changed by ordinary legislation. Id. However, a violation of the Miranda rule is not tantamount to a violation of the Fifth Amendment right against compelled self-incrimination.

¶8 The voluntariness of a defendant's confession is analyzed through the lens of due process under the Fourteenth Amendment and is determined based on the totality of the circumstances surrounding the interrogation. Withrow v. Williams, 507 U.S. 680, 688-89, 693 (1993). Courts look to the totality of the circumstances "to determine whether a confession has been made freely, voluntarily and without compulsion or inducement of any sort." Id. (internal quotations omitted). The relevant circumstances to be considered include any police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity and education along with his or her mental health and physical condition. Id. The failure of the police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation is also considered. Id. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" Colorado v. Connelly, 479 U.S. 157, 167 (1986). See United States v. McCullah, 76 F.3d 1087, 1101 (10th Cir. 1996) ("A defendant's confession is involuntary if the government's conduct causes the defendant's will to be overborne 'and his capacity for self-determination critically impaired.'") (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)).

¶9 The Supreme Court has held in this regard that:

The Miranda exclusionary rule . . . serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation. The Fifth Amendment prohibits use by the prosecution in its case in chief only of compelled testimony. Failure to administer Miranda warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under Miranda. Thus, in the individual case, Miranda's preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm.

Oregon v. Elstad, 470 U.S. 298, 306-07 (1985).

¶10 The district court's ruling was that Appellee's unwarned statements to the police must be suppressed because he was subject to custodial interrogation which required administration of the Miranda warning. The district court did not rule that Appellee's statements to the police were involuntary. Indeed, the district court expressly found there was no misconduct whatsoever by the police. In the present case, the contours of the district court's ruling suppressing Appellee's statements on grounds that Miranda was violated does not qualify for review under the interpretation of Section 1053(6) now adopted by a majority of this Court. Absent a finding by the district court that Appellee's unwarned statements were not voluntary because of coercive police activity, there simply is no finding of a constitutional violation, and thus no suppression or exclusion of evidence to remedy a constitutional violation.

III

¶11 The majority tells us that jurisdiction is assured in this case because the Miranda rule is a constitutionally based decision which safeguards an accused's Fifth Amendment right against self-incrimination. Maj. Op. at 3. But as discussed above, Miranda's constitutionally based rule does not translate into a Fifth Amendment violation in this case. This distinction has serious ramifications for this Court's jurisdictional analysis post-Crawford, which authorizes state appeals under Section 1053(6) only for a pretrial order, decision or judgment of the district court suppressing or excluding evidence based upon a finding of a constitutional violation.

¶12 In Crawford, the authoring judge wrote in footnote 5 that suppression of evidence stemming from an unwarned confession, while the defendant was in custody, would satisfy the standard for an appeal under Section 1053(6). The opinion cited the Fifth Amendment in support of this proposition. Crawford, 2026 OK CR 4Crawford was incomplete because again a violation of the Miranda rule does not necessarily demonstrate a constitutional violation.

¶13 I dissented in Crawford because, inter alia, its interpretation of Section 1053(6) deviates from the plain language of the statute by limiting state appeals under this provision to pretrial rulings suppressing evidence for constitutional violations. Crawford, 2026 OK CR 4Id.

¶14 Another red flag is Crawford's inconsistent interpretation of parallel statutory language in Section 1053. Title 22 O.S.Supp.2022, § 1053suppressing or excluding evidence where appellate review of the issue would be in the best interests of justice." (emphasis added). Section 1053(6) contains similar language that authorizes state appeals "[u]pon a pretrial order, decision or judgment suppressing or excluding evidence in cases alleging violation of any provisions of Section 13.1 of Title 21 of the Oklahoma Statutes." (emphasis added). The Crawford court interprets Section 1053(5) as using "a more restrictive definition for 'suppressing or excluding' [evidence] as used in Section 1053(6) than that used in Section 1053(5)." Crawford, 2026 OK CR 4Crawford, 2026 OK CR 4E.g., State v. Ballenger, 2022 OK CR 11514 P.3d 478State v. Strawn, 2018 OK CR 2419 P.3d 249

¶15 The inconsistencies in Crawford's interpretation of the parallel statutory language in Section 1053(5) and 1053(6) is contrary to how we normally conduct statutory interpretation and is driven by the type of policy choices belonging to the legislature. See Crawford, 2026 OK CR 4See Patel v. Garland, 596 U.S. 328, 346 (2022) ("Yet we inevitably swerve out of our lane when we put policy considerations in the driver's seat. [P]olicy concerns cannot trump the best interpretation of the statutory text.").

¶16 The present case is another example of why the rule first hatched in Crawford is so flawed. Today's case easily fits within the plain language of Section 1053(6)'s jurisdictional mandate. The plain reading of the statute alleviates the difficulties that arise from a state appeal like this one involving the exclusion of evidence for a non-constitutional violation that implicates constitutional concerns.

¶17 The majority disregards the plain language of the statute, admittedly interprets parallel language in Section 1053(5) and 1053(6) inconsistently, and now expands the meaning of "constitutional violation" for state appeal jurisdictional purposes to include review of non-constitutional violations like those found in the present case. Perhaps this should be unsurprising given the majority's suggestion today that Section 1053(6) may encompass even more than has been recognized thus far. Maj. Op. at 2 ("Whatever else Section 1053(6) encompasses, it clearly allows a State to appeal when the remedy of suppression or exclusion is applied by the trial court after finding a violation of some right guaranteed by the Constitution." (emphasis added)). The majority's approach to Section 1053(6) should be discarded in favor of applying the plain language of the statute which, again, would authorize jurisdiction in this case.

¶18 Based upon the foregoing, I concur in part and dissent in part to today's decision.

FOOTNOTES

Crawford is arguably dicta beyond its holding that there was no final order that could be appealed under Section 1053. Four judges concluded that the district court's order was not a final order suppressing or excluding evidence that could be appealed. See Crawford, 2026 OK CR 4id. at ¶ 1 (Lewis, J., specially concurring); id. at ¶ 1 (Hudson, J. dissenting); id. at ¶ 3 (Rowland, J., specially concurring). The State's appeal in Crawford was thus unauthorized because, regardless of how the statute was construed, the trial judge's ruling was not a final order.